[Cite as *In re S.C.*, 2020-Ohio-233.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| IN RE: | : | CASE NO. CA2019-03-026 |
| S.C. | : | O P I N I O N<br>1/27/2020 |
| | : | |
| | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2009JG16848

Barbara J. Howard Co., L.P.A., Barbara J. Howard, Sara C. Sanderson, 120 East Fourth Street, Suite 960, Cincinnati, Ohio 45202, for appellant

Nichols, Speidel & Nichols, Donald W. White, Andrew P. Hakala-Finch, 237 E. Main Street, Batavia, Ohio 45103, for appellee

**M. POWELL, J.**

{¶ 1} Appellant, mother of S.C., appeals a decision from the Clermont County Court of Common Pleas, Juvenile Division, modifying the child support payment she receives from appellee, the father of S.C. For the following reasons, we affirm the decision of the juvenile court.

{¶ 2} In 2007, S.C. was born. Mother and father never married and S.C. is the only

child between them.  In 2009, father filed a complaint for custody, which was subsequently denied.  Thereafter the juvenile court designated mother S.C.'s residential parent and legal custodian and provided father with parenting time.  In March 2011, a magistrate ordered father to pay child support in the amount of $697.45 a month effective January 1, 2009.  The retroactivity of the support order necessarily created a significant child support arrearage.  Therefore, in addition to the set amount, the juvenile court ordered father to pay an additional $250 a month towards his arrears.   The juvenile court predicated father's support obligation on an imputed income of $39,109.   The juvenile court adopted the magistrate's decision in June 2011.

{¶ 3}   In June 2011, father suffered a work-place injury for which he began receiving workers' compensation benefits in November 2011.  Based on his reduced income and an agreement with mother, in April 2012, the juvenile court reduced father's support obligation to $285.64 with an additional $56 toward arrears effective November 2011.[1]  This order was based on father's reported income of $13,572.

{¶ 4}   In May 2016, mother moved to increase father's child support obligation.[2] Mother alleged in her motion that father had misrepresented his income in 2012 when the court reduced the support obligation.  Mother argued that father was convicted of defrauding the Ohio Bureau of Workers' Compensation ("BWC") by receiving payments in excess of his entitlement from May 2012 to April 2014 as a result of concealing outside employment while receiving temporary total disability and living maintenance benefits and later working beyond the medical restrictions of his benefits.  In addition to the modification, mother requested that the court rescind the previous modification and reinstate the original support

---

1. The record shows that the order modifying father's support obligation was entered on April 24, 2012, however, the juvenile court misidentified this order as entered in March 2012.

2. In addition to the support modification motion, both parties filed additional motions on issues unrelated to this appeal.

obligation for the period from November 2011 to May 2016 because of the BWC fraud.[3]

{¶ 5}   In consideration of this motion, the juvenile court held a series of hearings in May and December 2018.  Relevant to this appeal, the court heard testimony from mother, mother's husband, a special agent from the BWC that investigated father's fraud, father, father's wife, and a certified public accountant mother called as an expert.  In addition to those witnesses, both parties submitted copious documentary exhibits including father's and his wife's personal and business banking statements, the BWC investigation report, and various tax documents.

{¶ 6}   In February 2019, the juvenile court entered an order increasing father's support obligation effective May 2016.  The court refused to modify the child support obligation for the period before the filing of the modification motion.  Therefore, from May 2016 to December 2017, the juvenile court increased father's support obligation to $415.78 a month.  Then, effective January 2018, father's support obligation increased to $571.95 a month.  The juvenile court predicated father's support obligation on an annual income of $30,000 in 2016 and 2017 and an annual income of $50,000 in 2018.  The juvenile court allocated 65% of any uncovered healthcare expenses to father and the remaining 35% to mother.  Finally, the juvenile court ordered father to pay an additional $50 a month toward outstanding arrears.

{¶ 7}   Mother now appeals, raising four assignments of error for review.

{¶ 8}   Assignment of Error No. 1:

{¶ 9}   THE TRIAL COURT ABUSED ITS DISCRETION IN SETTING CHILD SUPPORT AT THE STATED AMOUNTS.

{¶ 10}  In her first assignment of error, mother argues that the juvenile court erred in

---

3. At closing argument, mother requested that the reinstatement become effective only from April 2012.

determining father's income at an amount less than the evidence established. Mother further contends that the juvenile court improperly discounted her expert's testimony.

{¶ 11} The purpose of the statutory child support system is to protect children and promote their best interests. *Harmon v. Radcliff*, 12th Dist. Butler No. CA2017-04-047, 2017-Ohio-8682, ¶ 56. To that end, the Revised Code provides a comprehensive framework to determine the optimal financial support parents should pay for their children. *See* R.C. Chapter 3119. Nevertheless, a trial court "possesses considerable discretion" in deciding child support matters. *Hilbert v. Hilbert*, 12th Dist. Butler Nos. CA2015-10-182 and CA2015-11-185, 2016-Ohio-8099, ¶ 9. Therefore, on review, "a trial court's decision on a motion to modify child support will not be reversed absent an abuse of discretion." *Flege v. Flege*, 12th Dist. Butler No. CA2003-05-111, 2004-Ohio-1929, ¶ 31; *accord Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). An abuse of discretion is more than an error of law or judgment, it implies an attitude of the court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). On an abuse of discretion review, "an appellate court is not free to substitute its judgment for that of the trial judge." *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990). Finally, "challenges to factual determinations upon which the child support order is based are reviewed using the 'some competent credible evidence' standard." *Pettit v. Pettit*, 12th Dist. Fayette No. CA2011-08-018, 2012-Ohio-1801, ¶ 86.

{¶ 12} Relevant to this review, a parent's income is determined based on the individual's employment status. *See* former R.C. 3119.01(C)(5).[4] For a parent employed "to full capacity," "income" is defined as the gross income of the parent. *Id.* With some

_____

4. After the juvenile court entered its decision modifying child support, R.C. Chapter 3119 was subject to a comprehensive overhaul to amend and repeal provisions within Ohio's child support system. *See* 2018 Sub. H.B. No. 366, effective March 2019; *see also A.S. v. J.W.*, 157 Ohio St.3d 47, 2019-Ohio-2473, footnote 1. While the amendments changed the specific statutory provision, we will refer to the former statutory designation in effect at the time the motion was filed.

- 4 -

exceptions, "gross income" is

> the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income.

Former R.C. 3119.01(C)(7).

{¶ 13} Mother does not dispute that father was fully employed for purposes of determining his gross income. Instead, mother argues that the juvenile court erred in its calculation of gross income because father's income was essentially self-generated. "Self-generated income" is defined as

> gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. "Self-generated income" includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses.

Former R.C. 3119.01(C)(13). Furthermore, R.C. 3119.05(A) requires the court to verify the parents' income through electronic means or suitable documents, for example paystubs or tax returns. This court has previously explained that when a parent's income is generated through a corporate or individual proprietorship a trial court must conduct a "review of all circumstances" in order to determine if the parent has either taken or concealed anything

- 5 -

of value from the business that should be considered as personal income. *Marder v. Marder*, 12th Dist. Clermont No. CA2007-06-069, 2008-Ohio-2500, ¶ 64; *accord Marron v. Marron*, 12th Dist. Warren Nos. CA2013-11-109 and CA2013-11-113, 2014-Ohio-2121, ¶ 14. This is because of the possibility that a parent may use the business to derive personal benefit while avoiding child support. *Marder* at ¶ 64.

{¶ 14} Here, the juvenile court found that father and his wife started a tree service business in in 2014. The business was organized as a limited liability company. In order to qualify for certain loans, because father had a prior felony conviction, father's wife was named as the sole owner/member of the company. As such, father's wife conducted the banking and purchasing operations for the company and all loans for equipment purchases were in the wife's name. However, father is the one with the expertise in the tree service industry. Therefore, father is responsible for managing the daily operations of the business including arranging jobs, setting employee schedules, and interacting with clients.

{¶ 15} Initially father received company draws in addition to his employee paycheck. However, father testified that he stopped this practice sometime around 2016 and thereafter received only an employee paycheck. In 2016, father's W-2 indicated that he earned $16,807.71 from the company. His wife's 2016 W-2 indicated that she earned $22,246.51 from the company. The juvenile court found that father admitted at the hearing that his annual income for 2016 and 2017 was around $30,000 for each year and that father admitted that his income in 2018 increased to around $50,000.

{¶ 16} On the other hand, mother's expert determined father's income to be $131,162.40 for 2015, and $103,346.65 for 2016. In arriving at this conclusion, the expert explained that many of the business expenditures did not appear to be legitimate business activities, although she could not trace these expenses because she was not provided business receipts for the corresponding transactions. Therefore, mother's expert added

together the business expenses and transactions she determined were for father's personal benefit, such as food expenses, a percentage of the fuel expenses, and miscellaneous transfers into personal banking accounts. The expert opined that her "add-backs" were based on conservative estimates because there were even more other unexplained transfers from the business accounts that were not included in the determination. Finally, the expert identified other unexplained transactions for "other assets" in the business's financial documents that would confer to father a higher income of $220,290.40 in 2015 and $185,431.65 in 2016.

{¶ 17} In examining the evidence, the juvenile court found much of mother's evidence to be superfluous and that the income attributed to father by mother's expert was not reasonably supported by the evidence. Moreover, the juvenile court found that mother's request to impute the expert's highest proposed 2015 income was unrealistic given the business's substantial expenses – e.g., equipment storage rental fees and employee wages – compared to the business's 2015 reported gross revenue of $277,605. Instead, the juvenile court relied on father's admission that his income was around $30,000 in 2016 and 2017 and grew to $50,000 in 2018 because of his wife's reduced involvement with the business. Therefore, the juvenile court imputed a gross income of $30,000 to father for 2016 and 2017 and a gross income of $50,000 in 2018.

{¶ 18} The juvenile court found that father was able to provide a credible explanation for many of the expenses and transactions that mother's expert attributed as for personal benefit. Further, the juvenile court discounted the testimony of mother's expert. The juvenile court offered several reasons for discounting the expert witness's opinion. First, the juvenile court found that the witness did not have specific experience in forensic accounting. Second, the court found the witness to be potentially biased because she had been an accountant for mother's father for several years. Finally, the court found the expert

did not rely on reliable accounting methods and instead used unsubstantiated assumptions to determine how much of the business expenses should be attributed to father as income.

{¶ 19} After our review of the record, we find that the juvenile court did not abuse its discretion in determining father's income. Although this case is a prime example of the problems faced when assessing income from a closely held business, the juvenile court conducted a thorough review of the evidence.

{¶ 20} Father and his wife created a new business which is entirely "owned" by his wife. All the financial obligations are in the name of the business or the wife, however, father is an authorized user on the business's bank and credit card accounts. Initially, during cross-examination, father testified that he could not recall basic details of the financial transactions regarding the business's credit and debit cards or checks, even though these transactions were through his authorized account. In addition, father could not remember transactions reflected in his own personal bank accounts. However, after mother's expert testified, father was able to explain many of the expenses the expert attributed to him as for a personal benefit. The juvenile court found father's explanation to be credible. Besides father's explanation, mother's expert acknowledged that her attributions were merely assumptions based on her accounting experience, but she could not verify whether the business expenditures were legitimate business activities.

{¶ 21} Father admitted that he received draws from the business in 2015 for around $27,000. The juvenile court had business bank statements verifying these transfers to father's personal bank account. In 2016, in addition to the employee wages he received, father also admitted to receiving around $13,000 in draws from the business, bringing his total income to around $30,000. Again, the juvenile court had father's W-2 for 2016 and the business's banking statements showing the transfers to his personal account amounting to $13,000 to verify a gross income of around $30,000. Father admitted that his income in

2017 was comparable to 2016. Finally, father admitted that his income from the business increased to $50,000 in 2018. The increase in 2018 was in part because of more business revenue, but also because father's wife received less compensation. However, there were no federal or state tax documents presented to verify the 2017 or 2018 incomes. Notwithstanding the lack of more recent tax documents, we find there was some competent, credible evidence to support the juvenile court's decision to assign father's income as $30,000 for 2016 and 2017 and then $50,000 in 2018. While it is troublesome that father admitted to a higher income than what he reported for tax purposes, it is not the role of an appellate court to second-guess a trial court on matters of credibility. *Marder*, 2008 Ohio 2500 at ¶ 74. Moreover, as the *Marder* court explained, "income for child support purposes is not equivalent to the parent's taxable income." *Id* at ¶ 62. In determining gross income, "federal and state tax documents provide a proper starting point to calculate a parent's income, but they are not the sole factor for the trial court to consider." *Foster v. Foster*, 150 Ohio App.3d 298, 2002-Ohio-6390, ¶ 11 (12th Dist.). The juvenile court had banking statements from both the business and father personally in addition to father's admissions. Accordingly, it was not unreasonable, arbitrary, or unconscionable for the juvenile court to set father's income as it did.

{¶ 22} Next, we turn to the issue of the expert witness. While the juvenile court discussed Evid. R. 702 and the rule's admissibility requirement of "reliability" in its decision, the court did not exclude the expert's opinion. Instead, the decision analyzed credibility and concluded that little weight be given to the expert's opinion. Weight of the evidence and credibility of witnesses are primarily for the trier of the facts. *Flege v. Flege*, 12th Dist. Butler No. CA2001-09-225, 2002-Ohio-6105, ¶ 21. Therefore, this issue will be reviewed as a manifest weight of the evidence challenge. An appellate court must be mindful of the presumption in favor of the finder of fact. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-

Ohio-2179, ¶ 21.  An appellate court will reverse the judgment on manifest weight grounds only in exceptional circumstances when the evidence weighs heavily against the judgment. *Winn v. Wilson*, 12th Dist. Butler No. CA2017-04-052, 2018-Ohio-1010, ¶ 15.

{¶ 23} Here, the evidence does not weigh heavily against the court's decision to discount the expert witness's testimony.  The juvenile court found that the expert's opinion was based on unsupported "assumptions" and supported this finding with reference to several instances in which the expert's assumptions were incorrect. The juvenile court also found there was potential bias in the expert's opinions due to her longstanding business relationship with mother's father.  Moreover, the expert acknowledged that she did not have any vendor receipts to verify whether the business expenditures were for legitimate expenses or not.  Therefore, the expert based its attributions of income to father only on the name of vendor, e.g*.,* a known fuel or food merchant, or other transaction recipient designated by the bank statements.  Depending on whether that type of vendor could be used for legitimate business purposes, the expert assigned a percentage of that expense to father as personal use.  However, the expert did not explain her rationale for deriving the specific percentage used.  For example, the expert attributed 20% of the business's total expenditures to fuel merchants as personal use because she was told that father used a business vehicle for personal travel.  Likewise, she attributed 50% of the total food merchant expenditures to father's income seemingly because it was for food.

{¶ 24} On cross-examination, the expert conceded that several of the expenditures she credited as personal could have been legitimate business expenses, such as storage facility fees.  The expert also incorrectly attributed as income to father miscellaneous child support fees the company paid for its other employees.  These concessions, in conjunction with the fact that the expert did not fully explain why she attributed the given percentage, demonstrate that many of her conclusions were merely speculative in nature. *See Schneble*

- 10 -

*v. Stark*, 12th Dist. Warren Nos. CA2011-06-063 and CA2011-06-064, 2012-Ohio-3130, ¶ 41 (the trial court did not err in giving little weight to an expert's testimony because of its highly speculative nature). Therefore, the juvenile court did not err in its treatment of the expert testimony.

{¶ 25} Considering the foregoing, mother's first assignment of error is overruled.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO RETROACTIVELY MODIFY CHILD SUPPORT BACK TO THE DATE OF FATHER'S ORIGINAL FRAUD.

{¶ 28} In mother's second assignment of error, she argues that the juvenile court should have set the effective date of father's increased support obligation to sometime in 2012 and not the date the original motion to modify was filed. In support, mother contends that father convictions for defrauding the BWC show that he perpetrated fraud against her.

{¶ 29} Generally, "a modification order should be retroactive to the date the motion was filed unless special circumstances dictate otherwise" because of the substantial time it takes to modify the support order. *Kauza v. Kauza,* 12th Dist. Clermont No. CA2008-02-014, 2008-Ohio-5668, ¶ 21; R.C. 3119.84. Ohio courts have held that an exception to that rule is that a trial court may modify the support obligation to a time before the motion was filed if the court finds that the support obligor perpetuated fraud. *Marder*, 2008-Ohio-2500 at ¶ 20; *accord Torbeck v. Torbeck*, 1st Dist. Hamilton No. C-010022, 2001 Ohio App. LEXIS 4371, *9-10 (Sep. 28, 2001); *In re J.S.,* 2nd Dist. Montgomery No. 24597, 2012-Ohio-421, ¶ 21; *Osborne v. Osborne*, 81 Ohio App.3d 666, 674 (4th Dist.1992). As this court has previously explained, "[f]raud may justify retroactive modification so that the party committing fraud does not economically benefit from its misrepresentation." *Unger v. Unger*, 12th Dist. Brown No. CA98-02-003, 1999 Ohio App. LEXIS 1622, *10-11 (Apr. 12,

1999). An appellate court reviews the decision to make or not make the modification retroactive for an abuse of discretion. *Kauza* at ¶ 20.

{¶ 30} Here, the juvenile court refused to modify the support obligation prior to the 2016 modification motion because the fraud committed by father against the BWC occurred after the agreed entry reducing the support was entered. Furthermore, the juvenile court found that father was paying restitution as part of his sentence.

{¶ 31} After our review of the record, we find the juvenile court did not abuse its discretion. Father certainly defrauded the BWC, however, this is not the same as perpetrating a fraud against mother, or the court, to obtain a child support reduction. There is no dispute that father was injured while at work and therefore entitled to workers' compensation benefits. There is nothing in the record that demonstrates mother was unaware that father was receiving workers' compensation payments or otherwise concealed that income from her or the court. Furthermore, as the juvenile court found, the criminal activity to which father pleaded guilty occurred from May 2012 to April 2014, dates that occurred after the April 2012 modification order entry. Finally, as part of his sentence, father was ordered to pay restitution to the BWC. Contrary to mother's argument there was competent, credible evidence to show that father was paying the restitution. Consequently, father has not received a windfall from this crime to the detriment of his duty to support his child.

{¶ 32} Accordingly, mother's second assignment of error is overruled.

{¶ 33} Assignment of Error No. 3:

{¶ 34} THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOCATING UNINSURED MEDICAL EXPENSES WITH FATHER PAYING 65% AND MOTHER PAYING 35%.

{¶ 35} In the third assignment of error, mother argues that the juvenile court abused

its discretion by deviating from the ratio of individual income to total parent income in allocating the parents' responsibility to pay S.C.'s extraordinary medical expenses.[5] Under current law, each parent's percentage of total parent income is defined as "income share." R.C. 3119.01(C)(10).

{¶ 36} In considering this assignment of error, we begin with the premise that neither the law in effect at the time the juvenile court considered this matter nor current law mandates that extraordinary medical expenses for children subject to a child support order be allocated between the child's parents based upon the parents' income shares. Former R.C. 3119.32(D) provided that child support orders include, "[a] requirement that the obligor, the obligee, or both of them under a formula established by the court, with respect to a court child support order, * * * pay co-payment or deductible costs required under the private health insurance policy, contract, or plan that covers the children."[6] Although courts frequently allocate responsibility for extraordinary medical expenses between parents based upon their income shares, neither this practice nor any other methodology for allocation of extraordinary medical expenses is embodied by statute. Both former and current R.C. 3119.32(D) plainly contemplate that a trial court exercise discretion in ordering allocation of extraordinary medical expenses for children subject to a child support order. Thus, we review the juvenile court's decision allocating payment responsibility for extraordinary medical expenses as part of a child support order for an abuse of discretion. *See York v. York,* 12th Dist. Clermont No. CA2011-03-016, 2011-Ohio-5872, ¶ 16.

_____

5. Extraordinary medical expenses were defined by former R.C. 3119.01(C)(4) as any uninsured medical expenses incurred for a child during a calendar year that exceeded one hundred dollars. Current R.C. 3119.01(C)(7) defines extraordinary medical expenses as any uninsured medical expenses incurred for a child during a calendar year that exceed the total cash medical support amount owed by the parents during that year.

6. With the enactment of 2018 Sub. H.B. 366, cash medical support must now be provided as part of the support order to be "based on the number of children subject to the order and split between the parties using the parents' income share." R.C. 3119.30(C). Those expenses not covered by the cash medical support are to be determined by a "formula established by the court." R.C. 3119.32(D).

{¶ 37} A review of the support computation worksheets shows that for 2016 and 2017 father's income share was around 70%. His income share increased to 80% in 2018. Here, the juvenile court ordered father to pay 65% of the extraordinary medical expenses incurred for the child. Although the extraordinary medical expense allocation does not mirror the parties' income shares, it is not such a significant disparity as to be arbitrary, unreasonable, or unconscionable in this instance. Consequently, the juvenile court did not abuse its discretion allocating the extraordinary medical expenses as it did.

{¶ 38} Mother's third assignment of error is overruled.

{¶ 39} Assignment of Error No. 4:

{¶ 40} THE TRIAL COURT ABUSED ITS DISCRETION IN SETTING [FATHER'S] CHILD SUPPORT ARREARAGE PAYMENT AT $50 PER MONTH.

{¶ 41} In her fourth assignment of error, mother argues that the juvenile court abused its discretion by setting the monthly amount for arrearage payments at $50. In support, mother argues that father has significant arrears and the current payment scheme is substantially below the initial support order's repayment scheme of $250 a month.

{¶ 42} As a child support matter, we review the arrearage payment determination for an abuse of discretion. *See Booth*, 44 Ohio St.3d at 144. For father's support obligation from 2016-2017, the $50 arrearage payment amounted to 12% of the underlying monthly support obligation. For 2018 onward, this arrearage payment amounts to around 9% of the underlying monthly support obligation. These amounts are not unreasonable, arbitrary, or unconscionable. Therefore, the decision to set father's arrearage amount at $50 a month was not an abuse of discretion.

{¶ 43} Mother's fourth assignment of error is overruled.

{¶ 44} Judgment affirmed


HENDRICKSON, P.J., and S. POWELL, J., concur.