[Cite as *Atlas Piers NEO v. Summit Constr. Co., Inc.*, 2021-Ohio-2024.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

ATLAS PIERS NEO

    Appellee

    v.

SUMMIT CONSTRUCTION CO., INC.

    Appellant

C.A. No.     29457

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2014-09-4072

DECISION AND JOURNAL ENTRY

Dated: June 16, 2021

CARR, Presiding Judge.

{¶1} Defendant-Appellant Summit Construction Co., Inc. ("Summit") appeals the decisions of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} In 2011, Summit was the general contractor on an Akron Metropolitan Housing Authority ("AMHA") project in Akron. The original architectural and structural drawings were prepared by TC Architects, Inc, who was, at the time, the structural engineer of record. The plans set forth the locations of the helical piers and the loads for the foundation. Separate documents set forth the specifications for the helical piers themselves. The specifications required the piers be designed with a safety factor of 2 to 1. Summit subcontracted with Plaintiff-Appellee Atlas Piers NEO, a division of TCS, Inc. ("Atlas"), for, inter alia, the installation of helical screws and piers in buildings 3-10. Atlas provides services that help stabilize buildings constructed in poor soil conditions. The contract price was $240,278.00. The contract provided that

[Summit] shall retain out of each payment due [Atlas] 10% thereof [f]or a period of 30 days from Contractor's final acceptance. This period shall be computed for each structure or improvement from the date of completion of [Atlas'] work therein and [Summit's] final acceptance thereof. If [Atlas'] shall fail to repair promptly and efficiently any such defective work [Summit] upon notice may cause repairs to be made and may deduct the cost thereof from the retained amount. [Atlas'] liability hereunder shall not be limited to the retained amount.

{¶3} While the contract was dated April 11, 2011, it was not signed by Summit until August 18, 2011. Atlas and Summit had concerns about the specifications and plans. In the spring of 2011, Summit contracted with Ebersole Structural Engineers, Ltd. ("Ebersole") to prepare shop drawings for the helical piers. Steven Ebersole described his role as providing a foundation design. In reviewing the documents provided, Ebersole determined that the plans of TC Architects, Inc. were not accurate as they had not factored in the weight of the concrete. Ebersole then developed new plans at Summit's request. The plans were submitted in May 2011 but Ebersole was asked to revise and resubmit those plans, which it did so. In a June 2011 meeting there was a discussion as to whether to reduce the design loads and safety factor. In June 2011 correspondence to Ebersole, Summit noted that TC Architects, Inc. needed to formally address that it changed the safety factor from 2 to 1. Summit also sent correspondence to TC Architects, Inc. seeking guidance on what loads to use for the shop drawings and for revised specifications to show the safety factor to calculate the loads. Revised specifications that were issued did not list a safety factor. When Summit questioned TC Architects, Inc. about the safety factor, TC Architects, Inc. responded that the safety factor for the helical design was to be 1.0 and that the loads presented by Ebersole were acceptable. On June 30, 2011, Atlas installed four test piers.

{¶4} The revised plans were approved in July 2011. Two change orders were signed by the parties during the period from April 2011 until August 18, 2011. In July 2011, change order number one was issued which provided that Atlas would perform engineering on the helical piers

for $1800.00. In response, Atlas contracted with Earth Contact Products and obtained a preliminary design for the helical piers and sent it to Summit. Summit sent the Ebersole plans and the preliminary design from Earth Contact Products to TC Architects, Inc. Summit then asked Atlas to estimate the cost of the installation of the piers based upon Ebersole's July plans and the preliminary design from Earth Contact Products. The estimate broke the cost down per building and totaled over $665,000.00. On July 21, 2011, Summit told Atlas to order materials needed to begin work on buildings 3, 9, and 10. On July 26, 2011, TC Architects, Inc. approved Ebersole's foundation design, the drawings and specifications for the helical installation, and the Earth Contact Product's engineered design. Earth Contact Products noted that the design provided ultimate capacities with no factor of safety and it recommended a safety factor of 2 be applied. Change order number two was issued in August 2011 and provided for the cost and labor for the four helical test piers that were installed in June 2011 at an increased cost of $3,174.00.

{¶5} Change order number 3 was issued August 19, 2011 and signed a few days later. This change order removed the original contract amount and added the cost of installing piers in buildings 3, 9, and 10. The new contract price under the change order was $268,539.13. Change order 3 required Atlas to install the piers in accordance with the TC Architects, Inc. approved shop drawings and submittals. It indicated that Atlas would be paid on a unit price basis. On August 23, 2011, TC Architects, Inc. issued supplemental instructions that stated, inter alia, that buildings 9 and 10 would no longer require helical piers. It also stated that the helical piers that would be installed would be installed under the direction of Summit Testing & Inspection Company and to the depth required by Summit Testing & Inspection Company. Between August 22, 2011 and September 2, 2011, Atlas installed piers in building 3. Atlas averred that it only billed for the piers that it actually installed. While the original design did call for 15 additional piers to be installed

for privacy walls, Summit told Atlas that AMHA was not going to put piers in the privacy walls and instead it was going to use a different foundation. The application for payment, when compared with documents evidencing the piers installed, demonstrates that Atlas actually billed Summit for less than it installed.

{¶6} Atlas indicated that the installation went well until someone from Summit Testing & Inspection began providing different instructions than that provided by the designs. Atlas asked Summit about the issue and Summit told Atlas to follow the direction of Summit Testing & Inspection. Atlas requested that Summit release it from liability due to the changes ordered by Summit Testing & Inspection and also asked for a change order to verify the decrease in safety factor but the request was not granted. In addition, Summit Testing & Inspection caused delays in the installation by requiring Atlas to twice get a new gauge because Summit Testing & Inspection thought there was a problem with the gauge. After still being unhappy with the gauge, Summit Testing & Inspection then told Atlas to put the original gauge back on. Atlas requested payment for the lost time in an email to Summit. Summit responded that it would be submitting a claim for the delay and that Atlas would be a part of that claim. Summit, TC Architects, Inc., and AMHA entered into a change order that included $10,000 for delay costs. However, Summit did not pay any of those funds to Atlas.

{¶7} After the piers were installed, concerns arose, and, in early October Atlas performed a load test on some of the piers. Change order 5 was issued to address Atlas' costs with conducting the load test. Summit provided assurances to Atlas that Atlas was only responsible for the proper installation and not the design and stated that, with respect to building 3, Summit was directed by TC Architects, Inc. to install per the direction of Summit Testing & Inspection Company. As of the beginning of October, even Summit believed that Atlas had done its job with respect to building

3. On October 7, 2011, TC Architects, Inc. sent a letter to Summit expressing concern to Summit about the manufacturer's engineer, who was not licensed in Ohio, stamping a recommendation letter while onsite at the load test. TC Architects, Inc. asked Summit how it was going to remedy the issue. The president of Atlas testified that, after the load test report came out, at the end of October 2011, a meeting was held at Summit Testing & Inspection and the discussion was that "building [3] [wa]s finished and that we all accept it and approved it." On October 17, 2011, a representative from Summit emailed the president of Atlas and informed him that Ebersole was willing to review and stamp the Earth Concept Products design to fulfill the requirements for an Ohio stamp. Ultimately, Ebersole became the structural engineer of record and did review the pier design and stamp it with an Ohio stamp. Ebersole did not think it billed for providing the review and stamp.

{¶8} Ebersole reviewed the load test report and concluded, based upon its understanding that a 1.5 factor of safety was being used, that additional piers were required. However, Ebersole acknowledged that if the factor of safety had been eliminated there would not have been a need for the additional piers. Ebsersole did not have any reason to believe that the need for additional piers was due to any failure on Atlas' part to comply with the drawings.

{¶9} On December 28, 2011, Summit notified Atlas that Ebersole had determined modifications to the helical pier foundation were necessary in order for Ebersole to provide an Ohio stamp. Specifically, six additional piers were required in order to meet the load requirements in the original shop drawings. These additional piers did not appear on the approved shop drawings. Summit told Atlas that the "work is to be done at the unit cost rates agreed upon in your change order number 3." Atlas responded with a list of items that needed to be discussed before

work could proceed, including a change order for remobilizing. Summit refused to provide a change order as it believed one was not necessary.

{¶10} On January 4, 2012, Summit sent Atlas a letter giving it 48 hours to comply. On January 9, 2012, Summit sent Atlas a letter terminating the subcontract. Summit then contracted with Geotech Services, Inc. to install the helical piers for $3,300.00. While Summit did pay Atlas during 2011 for the invoices that were submitted, Summit withheld a retainer on each payment, which was authorized under the contract. Nonetheless, Summit maintained that it did not owe Atlas the retainer as it had paid Atlas appropriately for the work that was completed and because Atlas did not have its work stamped by an Ohio engineer; instead, Summit had to procure an Ohio stamp from Ebersole. Summit noted that the engineer from Earth Contact Products who came to the job site for the October 2011 load test could only provide a Texas stamp and it included a limited liability clause in its paperwork. Summit also maintained that 41 of the .203 stock piers were to be installed in building 3 and only 26 were installed; thus, when building 3 required an additional 6 piers, those piers should have already been covered. Summit also maintained that Atlas had billed it for the 41 piers despite only installing 26. It also asserted that Atlas overcharged for materials and thus was not entitled to the retainer. Irrespective, there appears to be no dispute that the monies retained by Summit totaled $20,985.64. Summit received its final retainage payment from AMHA in February 2014.

{¶11} In 2012, Summit filed a suit against Atlas. In turn, Atlas filed a counterclaim asserting that Summit breached the contract. Atlas maintained that it was entitled to its lost time, work, and lost profits. In addition, Atlas sought to recover the retainer withheld by Summit as well as attorney fees and costs. Ultimately, this suit was dismissed. Atlas refiled the suit, which became the instant matter. Atlas alleged that Summit breached the contract and sought money for

lost time, extra work performed, lost profits, and the retainer that was withheld. Atlas further asserted that Summit failed to timely pay Atlas in violation of R.C. 4113.61. Summit answered and filed a counterclaim. In its counterclaim, Summit alleged that Atlas breached the contract.

{¶12} Ultimately, the matter proceeded to a bench trial. In the trial court's judgment entry, it characterizes Atlas' claims as seeking damages for the retainer, for the delay, for the work Atlas failed to invoice Summit for, and for failing to timely pay in violation of R.C. 4113.61, which also allows for an award of 18% interest and attorney fees. The trial court concluded that Summit had abandoned its counterclaim by failing to include it in its proposed findings of fact and conclusions of law.

{¶13} After setting forth how it reached its conclusion, the trial court found that the amounts Atlas billed Summit reflected the amounts agreed to in change order 3 and the work performed, aside from the work that Atlas mistakenly failed to bill for. The trial court concluded that Atlas was not entitled to damages for the piers that it did not submit an invoice for. The trial court determined that Atlas did not have an obligation to remobilize and install the six additional piers without a change order and that the contract documents did not require that Atlas provide an Ohio stamped engineered pier design. Additionally, the trial court found that Atlas was entitled to damages for delay and awarded it prejudgment interest as well. As to the amounts retained by Summit, the trial court concluded that Summit owed Atlas those amounts. Based upon the amounts and dates of the retainer released to Summit, the trial court awarded Atlas $19,105.24 plus 18% interest from February 18, 2013, $1,692.36 plus 18% interest from April 18, 2013, and $188.04 plus 18% interest from March 6, 2014. The trial court further stated that Atlas was entitled to attorney fees and a hearing on the issue would be subsequently held.

{¶14} A hearing on attorney fees was held before a magistrate. Prior to the hearing, the parties submitted briefs and expert reports related to the issue. Atlas argued that its claims were too intertwined to separate out the work for the R.C. 4113.61 claim. Summit maintained that Atlas failed to satisfy the factors in the statute and that Atlas was only entitled to fees for the R.C. 4113.61 claim. The magistrate ultimately concluded that the claims were too intertwined to separate out the attorney fees. The magistrate awarded Atlas $51,847.63 for litigating it claims against Summit, $7,545.00 to litigate the attorney fees claim, and $1,500.00 to prepare a post-hearing brief. Summit filed objections to the magistrate's decision. Thereafter, the trial court issued a judgment entry adopting the magistrate's decision and entered judgment in favor of Atlas on its claims for attorney fees. The trial court awarded Atlas $4,082.25 in attorney fees for filing its brief in support of the magistrate's decision.

{¶15} Summit has appealed, raising three assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DETERMINING A VIOLATION OF R.C. 4113.61, THE OHIO PROMPT PAY ACT WHEREIN GOOD FAITH DEFENSES EXISTED WITH RESPECT TO THE APPELLEE'S UNDERLYING CLAIM.

{¶16} Summit argues in its first assignment of error that the trial court in its April 30, 2018 judgment determined Summit violated R.C. 4113.61 simply because it did not pay Atlas within 30 days after the receipt of payment from AMHA. Summit asserts that the trial court failed to analyze the facts and circumstances to determine whether there were good faith allegations or defenses asserted by Summit in order to determine whether attorney fees were appropriate. *See* R.C. 4113.61(B)(2)(a). While Summit addresses this broadly in terms of whether the trial court

properly found a violation of R.C. 4113.61, in actuality, Summit is asserting that the trial court failed to make the appropriate findings to authorize an award of attorney fees.

{¶17} R.C. 4113.61(B) provides:

(1) If a contractor, subcontractor, material supplier, lower tier subcontractor, or lower tier material supplier has not made payment in compliance with division (A)(1), (2), (3), (4), or (5) of this section within thirty days after payment is due, a subcontractor, material supplier, lower tier subcontractor, lower tier material supplier, or laborer may file a civil action to recover the amount due plus the interest provided in those divisions. If the court finds in the civil action that a contractor, subcontractor, material supplier, lower tier subcontractor, or lower tier material supplier has not made payment in compliance with those divisions, the court shall award the interest specified in those divisions, in addition to the amount due. Except as provided in division (B)(3) of this section, the court shall award the prevailing party reasonable attorney fees and court costs.

(2) In making a determination to award attorney fees under division (B)(1) of this section, the court shall consider all relevant factors, including but not limited to the following:

(a) The presence or absence of good faith allegations or defenses asserted by the parties;

(b) The proportion of the amount of recovery as it relates to the amount demanded;

(c) The nature of the services rendered and the time expended in rendering the services.

(3) The court shall not award attorney fees under division (B)(1) of this section if the court determines, following a hearing on the payment of attorney fees, that the payment of attorney fees to the prevailing party would be inequitable.

{¶18} After fully setting forth its findings of fact and analysis related to the issues, which included a discussion of Summit's claims and defenses, the trial court, in its April 30, 2018 entry, concluded that "[b]ecause Summit [] failed to make any payment to Atlas within thirty days after payment was due, and because Atlas had to file this lawsuit to recover the retainage due, Atlas is also entitled to an award of reasonable attorney fees and court costs incurred in prosecuting the within matter. By separate Order, the Court will schedule a hearing on the fees and costs incurred." Thus, the trial court's April 30, 2018 entry did not actually award any amount of attorney fees to

Atlas. Instead, as required by the statute, it ordered that a hearing take place. *See* R.C. 4113.61(B)(3).

{¶19} Briefs and exhibits were then filed, and a hearing was held before a magistrate on the attorney fees issue. The magistrate issued a decision, to which Summit filed objections. Thereafter, the trial court issued its May 30, 2019 judgment entry. In that entry, the trial court recited the statutory language of R.C. 4113.61(B)(2), which Summit argues was absent from the April 30, 2018 entry, and provided an analysis of the factors.

{¶20} Even assuming there was some error in the trial court's April 30, 2018 entry, Summit has not explained how any error would not be rendered moot by the thorough analysis in the May 30, 2019 entry, which was the entry that actually awarded attorney fees to Atlas. Accordingly, we cannot say that Summit has demonstrated any reversible error on the part of the trial court. Summit's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT'S FINDING OF A VIOLATION OF R.C. 4113.61, THE OHIO PROMPT PAY ACT, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE OVERWHELMING EVIDENCE OF GOOD FAITH DEFENSES TO APPELLEE'S UNDERLYING CLAIM WAS PRESENTED AT TRIAL BY THE APPELLANT.

{¶21} Summit argues in its second assignment of error that the trial court's finding that there was a violation of R.C. 4113.61 was against the manifest weight of the evidence.

{¶22} Where a party claims that a trial court's judgment is against the manifest weight of the evidence, "[t]he [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Internal quotations omitted.)

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001). "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 21. "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." (Internal quotations and citations omitted.) *Id.*

{¶23} In its post-trial brief, Atlas sought recovery pursuant to R.C. 4113.61(A)(3). R.C. 4113.61(A)(3) provides:

> If a contractor receives any final retainage from the owner for improvements to property, the contractor shall pay from that retainage each subcontractor and material supplier the subcontractor's or material supplier's proportion of the retainage, within ten calendar days after receipt of the retainage from the owner, or within the time period provided in a contract, invoice, or purchase order between the contractor and the subcontractor or material supplier, whichever time period is shorter, provided that the contractor has determined that the subcontractor's or material supplier's work, labor, and materials have been satisfactorily performed or furnished and that the owner has approved the subcontractor's or material supplier's work, labor, and materials.

> If the contractor fails to pay a subcontractor or material supplier within the appropriate time period, the contractor shall pay the subcontractor or material supplier, in addition to the retainage due, interest in the amount of eighteen per cent per annum of the retainage due, beginning on the eleventh day following the receipt of the retainage from the owner and ending on the date of full payment of the retainage due plus interest to the subcontractor or material supplier.

{¶24} There is no dispute that Summit failed to pay Atlas the $20,985.64 retainer that was withheld. Summit's argument on appeal is that it "asserted numerous good faith defenses to the payment of the retainage alleged due." In so doing, it focuses on the language in the statute that

states the contractor shall pay the subcontractor's retainage in a specified time period "provided that the contractor has determined that the subcontractor's or material supplier's work, labor, and materials have been satisfactorily performed or furnished and that the owner has approved the subcontractor's or material supplier's work, labor, and materials." R.C. 4113.61(A)(3). Without any citations to the nearly 500 page transcript or any of the more than 100 exhibits, *see* App.R. 16(A)(7), Summit asserts that Atlas' work was not satisfactorily performed or approved because of the absence of an Ohio stamped drawing that was required under the contract and because Atlas was paid in full for the work it did. Notably, in its argument, Summit does not point to any provision in the contract or change order 3 that would indicate an Ohio stamp was required to be provided by Atlas. *See id.* Likewise, in its argument, Summit points to no documentary evidence in support of its claim that Atlas was already fully paid for the work it did. *See id.* Further, the mere fact that Summit presented numerous defenses does not require the conclusion that the trial court found those defenses credible. This Court remains mindful that "[i]n reaching its verdict, the [trier of fact] was in the best position to evaluate the credibility of the witnesses and it was entitled to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *Wade v. Mancuso*, 9th Dist. Lorain No. 16CA010978, 2018-Ohio-1563, ¶ 33.

{¶25} The trial court concluded that Summit did not identify any language in the subcontract agreement that specifically required Atlas to provide an Ohio stamp and also closely examined whether Atlas appropriately billed for its work and set forth its calculations. Summit has not developed an argument discrediting the trial court's findings and conclusions. Given the limited arguments made on appeal, and after a thorough review of the record, we cannot say that Summit has demonstrated that the trial court's judgment is against the manifest weight of the evidence. *See Herhold v. Smith Land Co.*, 9th Dist. Summit No. 28915, 2019-Ohio-2418, ¶ 73.

{¶26}  Summit's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN ADOPTING THE MAGISTRATE'S DECISION AWARDING 100% OF THE ATTORNEY FEES REQUESTED BY APPELLEE IN CONNECTION WITH THE AWARD OF ATTORNEY FEES PURSUANT TO R.C. 4113.61, THE OHIO PROMPT PAY ACT, DESPITE THE PROMPT PAY CLAIM ASSERTED BY THE APPELLEE ONLY CONSISTING OF A SMALL PERCENTAGE OF APPELLEE'S OVERALL CLAIMS ASSERTED AT TRIAL, AND THE APPELLEE FAILED TO EVEN ATTEMPT TO SEPARATE OUT ATTORNEY FEES RELATED ONLY TO THE PURSUIT OF THE PROMPT PAY ACT CLAIM VERSUS OTHER CLAIMS AND DEFENSES ASSERTED AND TRIED IN THE PENDING LITIGATION.

{¶27}  Summit argues in its third assignment of error that the trial court erred in awarding Atlas all of its requested attorney fees.  Summit maintains that Atlas was only entitled to the fees expended in pursuing its claim under R.C. 4113.61.  Summit notes that Atlas did not recover a large portion of the money it sought; in fact, Atlas recovered substantially more in attorney fees than it did under the trial court's verdict.  Summit also argues that Atlas' claims were not intertwined.  Summit points to Atlas' billing statements which it asserts include time spent on the 2012 case which did not specifically reference a claim under R.C. 4113.61, as well as numerous other items that are unrelated to the R.C. 4113.61 claim.  Summit maintains that the trial court should have deducted time billed in the first case, time clearly assignable to Atlas' claim for lost profits or delay, and redundant time not necessary for the R.C. 4113.61 claim.  It does not appear that Summit challenges the award of attorney fees to Atlas for fees it incurred in litigating the attorney fees issues, a sum which totals $13,127.25.  Thus, the challenged sum actually amounts to $51,847.63.

{¶28}  Generally, this court reviews an award of attorney fees for an abuse of discretion. *See Westbury Place Homeowners Assn., Inc. v. Murea*, 9th Dist. Medina No. 19CA0075-M, 2020-Ohio-2879, ¶ 7.  Other courts have extended this standard of review to cases involving attorney

fees awarded pursuant to R.C. 4113.61. *See Xtreme Elements, LLC v. Foti Contracting, LLC*, 11th Dist. Lake No. 2017-L-099, 2018-Ohio-3323, ¶ 19, citing *Frank Novak & Sons, Inc. v. A-Team, L.L.C.,* 8th Dist. Cuyahoga No. 99777, 2014-Ohio-922, ¶ 63. Further, the Supreme Court of Ohio has stated that "[i]t is well settled that where a court is empowered to award attorney fees by statute, the amount of such fees is within the sound discretion of the trial court. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere." *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). "The trial judge which participated not only in the trial but also in many of the preliminary proceedings leading up to the trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court." *Id.*

{¶29} In *Bittner*, which involved awarding attorney fees pursuant to R.C. 1345.09(F)(2) as part of the Consumer Sales Practices Act ("CSPA"), the Court also noted that, "[w]here * * * the claims can be separated into a claim for which fees are recoverable and a claim for which no fees are recoverable, the trial court must award fees only for the amount of time spent pursuing the claim for which fees may be awarded. *Id.* at 145. Other courts have noted that, however, "when it is not possible to divide claims in this fashion, such as when claims not covered under the CSPA involve a common core of facts with claims arising under the CSPA, then the court may award attorney fees for all time reasonably spent pursuing all claims." *Bryant v. Walt Sweeney Automotive, Inc.*, 1st Dist. Hamilton Nos. C-010395, C-010404, 2002-Ohio-2577, ¶ 35; *Williams v. Sharon Woods Collision Ctr., Inc.*, 1st Dist. Hamilton No. C-170511, 2018-Ohio-2733, ¶ 19.

{¶30} "There is a strong presumption that the reasonable hourly rate multiplied by the number of hours worked, which is sometimes referred to as the 'lodestar,' is the proper amount for an attorney-fee award." *Phoenix Lighting Group, L.L.C. v. Genltye Thomas Group, L.L.C.,* 160

Ohio St.3d 32, 2020-Ohio-1056, paragraph one of the syllabus. R.C. 4113.61(B) states in relevant part:

> Except as provided in division (B)(3) of this section, the court shall award the prevailing party reasonable attorney fees and court costs.
>
> (2) In making a determination to award attorney fees under division (B)(1) of this section, the court shall consider all relevant factors, including but not limited to the following:
>
> (a) The presence or absence of good faith allegations or defenses asserted by the parties;
>
> (b) The proportion of the amount of recovery as it relates to the amount demanded;
>
> (c) The nature of the services rendered and the time expended in rendering the services.
>
> (3) The court shall not award attorney fees under division (B)(1) of this section if the court determines, following a hearing on the payment of attorney fees, that the payment of attorney fees to the prevailing party would be inequitable.

{¶31} In support of its claim for attorney fees, Atlas submitted the affidavit of its counsel. Atlas' counsel averred that Atlas agreed to compensate Atlas' counsel at a rate of $200.00 per hour for legal services performed out of office, $150.00 per hour for legal services performed in office, and $75.00 per hour for research and clerk services performed in furtherance of litigation. It does not appear that Summit asserts that the rates charged by Atlas' counsel were unreasonable. Attached to the affidavit was a copy of the invoices detailing the work performed, the hours expended, and the costs incurred. Atlas' counsel also testified at the hearing, as did an expert witness. The expert witness opined that the claims in the matter were so intertwined such that it was not possible to separate them out. In turn, Summit presented the testimony of an expert witness who maintained that the fees could be separated out into the fees solely for the R.C. 4113.61 claim and asserted that Atlas was only entitled to $14,460.00 in attorney fees.

{¶32} To the extent Summit challenges the trial court's award of attorney fees for 2012 litigation, based upon its argument on appeal, we conclude its contention is without merit. Summit only asserts that Atlas is not entitled to those fees because Atlas' 2012 counterclaim lacked a separate claim under R.C. 4113.61. As mentioned above, Atlas' 2012 counterclaim included allegations that Summit owed Atlas the retainer withheld for worked performed on building 3 totaling $20,985.00. In addition, Atlas sought attorney fees and costs. Civ.R. 8(A) only requires that, "[a] pleading that sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." At the hearing on attorney fees, Atlas' counsel testified that a claim under R.C. 4113.61 was part of the 2012 action, it was just not listed as a separate count; in the second action, Atlas chose to include it as a second count for the sake of clarity. Given the minimal requirements of Civ.R. 8(A), and Summit's limited argument on appeal, we cannot say that it would be unreasonable for the trial court to conclude that the 2012 action included a claim pursuant to R.C. 4113.61.

{¶33} The remainder of Summit's argument largely focuses on the notion that Atlas' attorney fees could be separated by claim. Summit aptly points to its own expert who did aver that only a portion of Atlas' attorney fees were connected to the R.C. 4113.61 claim. This is certainly evidence that the fees could be separated; however, Atlas presented evidence and argument that it was not within reason to do so. After a review of the record, we cannot say that the trial court abused its discretion in concluding that it was not reasonable to separate out the fees by claim. The matter before the trial court involved complex construction litigation centering around one subcontract and modifications to it via change orders. The vast majority of the litigation centered

around whether Atlas performed its obligations under the subcontract and change orders. This is further evidenced by Summit's arguments in the previous assignments of error which attempt to demonstrate that Summit had a reasonable basis for not paying Atlas its retainer. Summit maintained that its grounds for nonpayment required that Atlas should not succeed on its R.C. 4113.61 claim. Thus, for Summit to argue that the claims in this lawsuit are not intertwined is untenable.

{¶34} To the extent that Summit asserts that the award of attorney fees to Atlas is disproportionate and unreasonable in light of the sum recovered by Atlas as compared to the asserted value of its claims, we note that R.C. 4113.61(B)(2) lists factors to be considered and does not provide an exhaustive list. Nothing in the statute evidences that the factors are to be equally weighted, nor does the statute indicate that it is per se unreasonable for an award of attorney fees to substantially exceed the funds recovered by the prevailing party. While it is true that Atlas did not recover a large proportion of the money it sought, it was nonetheless successful in its litigation. Not only did it succeed on a portion of its claims, Summit failed to succeed on its counterclaim, in which it sought over $400,000.

{¶35} The trial court provided a detailed analysis of the statutory factors in its judgment entry, and in light of Summit's arguments on appeal, overall, we cannot say that it has demonstrated that the trial court abused its discretion in its attorney fees award to Atlas.

{¶36} Summit's third assignment of error is overruled.

III.

{¶37} Summit's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

DONNA J. CARR
FOR THE COURT

HENSAL, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

MARK W. BERNLOHR and SANDRA K. ZERRUSEN, Attorneys at Law, for Appellant.

DANIEL MARK WALPOLE, Attorney at Law, for Appellee.