DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Jennifer Mann, fka Jennifer Mendez, appeals from the decision of the Lorain County Court of Common Pleas, Domestic Relations Division, that found her in contempt and imposed a 30-day jail sentence. We affirm.
 I. {¶ 2} Ms. Mann and Appellee, Michael Mendez, began cohabitating in January 1992, and were married on February 27, 1993, in Elyria, Ohio. One child was born before the marriage, Allycia, dob December 22, 1992. Another child was born as issue of the marriage, Hayleigh, dob September 25, 1994. As a member of the United States Army, Mr. Mendez was stationed in Hawaii. Thus, the family lived in Hawaii until Ms. Mann returned to Elyria with the children in April 1995 due to the parties' decision to separate. Upon discharge from the army, Mr. Mendez moved to Lorain, Ohio.
 {¶ 3} On April 18, 1995, Ms. Mann filed a complaint for divorce in the Lorain County Court of Common Pleas. In his answer to the complaint, Mr. Mendez conceded to the grant of divorce and designation of Ms. Mann as the residential parent and legal custodian of the children. In a divorce decree issued on July 30, 1996, the court designated Ms. Mann the residential parent and legal custodian of the children in its judgment, granted Mr. Mendez weekly visitation with the children, and ordered Mr. Mendez to pay monthly child support.
 {¶ 4} In February 2000, Ms. Mann married Casey Mann. Casey was stationed in Mentor, Ohio at that time as a member of the United States Coast Guard. The couple lived together in Lorain County in Ohio until December 2002.
 {¶ 5} On May 4, 2001, the trial court issued an agreed judgment entry, which included a court-approved shared parenting plan. The plan designated Ms. Mann the residential parent for school placement purposes, but stated that "[t]he children will make their residence with each parent on an approximately equal basis, with due consideration for the work scheduling of each parent and in order to provide the least disturbance to the children and their scheduled activities." The parties agreed that Mr. Mendez would have companionship and visitation with the children on one weekday for four hours, in addition to other holiday and summer visitation times as specified in the agreement. The terms of the plan also specifically provided, that, if Casey was mandatorily transferred in the Coast Guard to a location that was greater than a three-hour drive from Mr. Mendez's home, then Mr. Mendez would have modified visitation, which provided for visitation during the summer months and certain holidays.
 {¶ 6} In December 2002, Ms. Mann filed a notice of intent to relocate to Montana. On December 13, 2002, Ms. Mann relocated to Montana with Casey and her two children.
 {¶ 7} On May 21, 2003, Mr. Mendez filed a motion to terminate the shared parenting plan, and to designate him the primary residential parent and legal custodian of the children. Additionally, Mr. Mendez filed a motion for contempt, asserting that Ms. Mann had violated the terms of the shared parenting plan.[1]
 {¶ 8} A trial was held on the pending motions. On August 29, 2003, the court issued a judgment that terminated the shared parenting plan, finding that it was no longer in the children's best interest to continue the plan as the parties undisputedly could not work in concert to effectuate the plan. The court also issued an interim order designating Mr. Mendez the residential parent and legal custodian.
 {¶ 9} The trial court issued a separate order on September 9, 2003, finding Ms. Mann in contempt for violating the plan's terms. The court ordered Ms. Mann to serve 30 days in jail and pay a $250 fine, both suspended upon the condition that she pay Mr. Mendez the sum of $5,150 in attorney fees for the contempt proceedings, by October 10, 2003.[2]
 {¶ 10} On August 31, 2004, the court issued an order finding that Ms. Mann had not purged herself of the contempt, and imposing the 30-day jail sentence. This appeal followed.
 {¶ 11} Ms. Mann timely appealed, asserting two assignments of error for review.
 II. A. First Assignment of Error
"The trial court abused its discretion by finding the plaintiff in contempt [.]"
 {¶ 12} In her first assignment of error, Ms. Mann contends that the trial court abused its discretion when it found her in contempt of the May 4, 2001 order that adopted the shared parenting plan. We disagree.
 {¶ 13} A trial court's finding of contempt will not be reversed absent an abuse of discretion. State ex. rel. Ventronev. Birkel (1981), 65 Ohio St.2d 10, 11. An abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 14} Mr. Mendez argues that Ms. Mann repeatedly violated the provisions of the shared parenting plan, and that she admitted as much during trial. The trial court found that Ms. Mann admitted to denying Mr. Mendez his scheduled visitation on more than one occasion prior to her move in December 2002 to Montana. Ms. Mann herself admitted during trial that she denied Mr. Mendez visitation on various days in June 2002.
 {¶ 15} Ms. Mann characterizes these admitted violations as "de minimus." She argues that to hold her in contempt for these violations is "manifestly unfair," and suggests that she nevertheless substantially complied with the plan. However, Ms. Mann has not demonstrated that she substantially complied with the court's order. She does not discuss how she complied with the visitation provisions, and instead complains of Mr. Mendez's alleged violations of the parenting plan. In either event, substantial compliance with a court order does not necessarily preclude a finding of contempt. See Robinson v. Robinson, 9th Dist. No. 21440, 2003-Ohio-5049, at ¶ 9, citing State ex rel.Celebrezze v. Gibbs (1991), 60 Ohio St.3d 69, 75 (finding that substantial compliance was not demonstrated where record was replete with examples of party's noncompliance).
 {¶ 16} Ms. Mann argues that it has been her position that her husband Casey was mandatorily transferred to the State of Montana with the Coast Guard, and that therefore, the provision of the parenting plan, which only provides for visitation during the summer and certain holidays, applies. However, we find nowhere in the record that Ms. Mann made this argument to the trial court. In fact, Ms. Mann conceded at trial that he was not mandatorily transferred. Furthermore, the evidence adduced at trial supports the finding that Casey voluntarily moved to Montana. The trial court found that the evidence "clearly established" that Ms. Mann made the decision in October 2001 to move with Casey and her children to Montana upon Casey's discharge from the Coast Guard, and that Casey was formally discharged in February 2003. Casey testified that he used his accumulated leave time to voluntarily move before his discharge because of a family business.
 {¶ 17} Ms. Mann then argues that, if the above-mentioned provision of the plan does not apply, then the only obligation she had remaining under the shared parenting plan was the requirement that she file a notice of intent to relocate under paragraph ten of the plan. She therefore complains that she had no duty to attempt to modify the plan to accommodate her move to Montana, and that she was "within the law to move the children to Montana against the father's wishes." Furthermore, Ms. Mann argues that the provision of the plan that required her to "use her best efforts to return within a 50 mile radius of father's then-current address in Ohio" after Casey was released from the Coast Guard, is void. Specifically, Ms. Mann argues that the provision effects an impermissible automatic change of residence of the children and "deprives the court of [the] jurisdiction to determine what the best interests of the child are at the time of the triggering event."
 {¶ 18} However, it is unnecessary for this Court to make a determination as to whether these specific arguments have merit, because the fact remains that Ms. Mann had violated the visitation provisions even prior to Casey's discharge. Thus, the trial court still had a basis for finding Ms. Mann in contempt of court. Additionally, the trial court had already terminated the plan pursuant to Mr. Mendez's motion for reallocation of parental rights and responsibilities. Any further determination by this Court of the validity of the plan's provisions or Ms. Mann's rights thereunder would thus be superfluous.
 {¶ 19} Based upon the foregoing, we cannot conclude that the trial court abused its discretion in finding Ms. Mann in contempt of court. Ms. Mann's first assignment of error is overruled.
 B. Second Assignment of Error
"The trial court erred by awarding an unreasonable amount of attorney's fees in the contempt proceeding by erroneously finding the plaintiff had stipulated to such fees[.]"
 {¶ 20} In her second assignment of error, Ms. Mann contends that the trial court erred when it ordered her to pay the amount of $5,150.00 in attorney fees, asserting that this amount was unreasonable. We disagree.
 {¶ 21} R.C. 3109.051(K) governs the award of attorney fees in a contempt action arising from a violation of a visitation order, and provides as follows:
"If any person is found in contempt of court for failing to comply with or interfering with any order or decree granting parenting time rights * * * or companionship or visitation rights * * * the court * * * shall assess all court costs arising out of the contempt proceeding against the person and require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt [.]" See Kimball v. Austin (Aug. 1, 2001), 9th Dist. No. 01CA007760, at *3-4.
Therefore, a trial court is required to order the party found in contempt of court to pay the adverse party's reasonable attorney fees arising from the litigation of the contempt matter involving a visitation order. See Beadle v. Beadle, 4th Dist. No. 03CA2911, 2004-Ohio-1400, at ¶ 18. Having found Ms. Mann in contempt of court for violating the visitation and companionship order, the trial court properly ordered Ms. Mann to pay any court costs and attorney fees Mr. Mendez incurred in relation to the contempt proceeding, per R.C. 3109.051(K).
 {¶ 22} However, we review the trial court's valuation of the attorney fees for an abuse of discretion. See Robinson at ¶ 15-16; Wolk v. Wolk (Sept. 25, 2001), 7th Dist. No. 98 CA 127, at *17. Thus, a court's attorney fees award will not be reversed unless it is deemed arbitrary, unreasonable, or unconscionable. See Blakemore, 5 Ohio St.3d at 219; Pons,66 Ohio St.3d at 621. "`What is reasonable,' for purposes of calculating attorney fees, `is a question of fact[, and t]he trial court must have evidence before it probative of that issue in order to make the finding.'" Kimball, at *4, quoting Madden v. Madden (June 14, 1996), 2d Dist. No. 15576, at *11.
 {¶ 23} The trial lasted three days, from August 18, 2003, to August 21, 2003. During the third day of trial, Mr. Mendez's counsel questioned him regarding the specifics of counsel's charged fees for the litigation of the change of custody and contempt matters, leading Mr. Mendez through a description of an attorney fee statement that was identified and marked as an exhibit. During the hearing, Mr. Mendez's counsel stated that she charged $3,000 as a retainer, and that her hourly rate was $200. She further stated that she charged another $3,000 during the course of the case. The final tally was $10,300, representing 51.5 hours of work. Counsel stated that she would allocate 50% of the time, or $5,150, on the termination of the shared parenting plan, and 50% to the litigation of the contempt action.
 {¶ 24} Ms. Mann's counsel explicitly stated that he did not dispute the hourly rate of $200. Counsel also did not challenge the total work hours spent on both matters, 51.5 hours, and the total attorney fee amount of $10,300. However, Ms. Mann now argues that her counsel never agreed that 50% of Mr. Mendez's attorney fees represented work done in the preparation and prosecution of the contempt motion. While Ms. Mann argues that she disputed the amount of attorney fees awarded as unreasonable and never stipulated to the 50% allocation, this fact is not so clear from the record, as is demonstrated by the following discussion between counsel and the court during Mr. Mendez's testimony:
"[Defense Counsel:] There is a bottom line number, what is that?
"[Mr. Mendez:] $10,300.
"[Defense Counsel:] When you consulted with me in May, there were two issues that you consulted with me about, one was Contempt and one a Change of Custody, is that correct?
"[Mr. Mendez:] Yes.
"[Defense Counsel]: Judge, for our purposes, and ease of analysis and bookkeeping, I believe it's fair to say there is about a 50/50 allocation of the resources to the Contempt and Change of Custody, so if we were to break that down, I think that would be the way it would fall.
"The Court: And, Mr. Bradley, [Ms. Mann's counsel,] are you comfortable with the professional reputation that the time has been allocated by Ms. Gentile?
"Mr. Bradley: 50/50.
"The Court: Yes, and any expenses related to the Contempt, for my purposes would be 50/50?
"Mr. Bradley: I think that [defense counsel] and I discussed whether or not that is a fair analysis, but if that is what [she] put into it, and is representing same to the Court, I am not going to dispute her analysis of that, except to comment on professionally what I think this would have been, and I think that [the magistrate] will enlighten the Court on how long a Contempt hearing usually goes, I thought it would take one day of trial time and plus one day of prep, that is my opinion on the issue before the Court."
 {¶ 25} Thus, Ms. Mann's counsel did not directly dispute the actual allocation of fees between the motions; rather, he seemingly agreed and stated what time allotment he would have anticipated had the two matters not been combined. Thus, it can be said that Ms. Mann's counsel effectively induced an error if it existed. "Under the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make." State ex rel.Fowler v. Smith (1994), 68 Ohio St. 3d 357, 359. Furthermore, Ms. Mann's counsel acknowledged that he "helped create this situation by reminding the Court through Magistrate Barilla that my client lived in Montana."
 {¶ 26} In is judgment, the trial court found that defense counsel presented a fee bill for the legal services she rendered during trial, that Ms. Mann's counsel stipulated to the reasonableness of the $200 hourly rate, and that her counsel also agreed that one-half the $10,300 bill represented services rendered for the contempt motion. Based upon our review of the record, we cannot conclude that the court's findings were unreasonable. Therefore, we also cannot conclude that the court abused its discretion in ordering Ms. Mann to pay one-half of Mr. Mendez's attorney fees, or $5,150. Ms. Mann's second assignment of error is overruled.
 III. {¶ 27} Ms. Mann's first and second assignments of error are overruled. The decision of the Lorain County Court of Common Pleas, Domestic Relations Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Moore, J., concur.
[1] On August 26, 2002, Mr. Mendez had filed a motion to show cause why Ms. Mann should not be held in contempt of the shared parenting plan, asserting that Ms. Mann had interfered with and denied him visitation with the children. Additionally, Mr. Mendez filed a motion to terminate the shared parenting plan and to designate him the residential parent and legal custodian. Thereafter, Mr. Mendez voluntarily dismissed these motions, and the court pronounced them dismissed without prejudice.
[2] Ms. Mann filed a notice of appeal to this Court from the September 11, 2003 order. Case No. 03CA008353. However, that appeal was dismissed for lack of a final, appealable order.