[Cite as *Hibben v. McGuire*, 2022-Ohio-3598.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| JENNIFER WILLIAMS nka HIBBEN | C.A. No. 21CA011784 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CYNTHIA MCGUIRE | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellee | CASE No. 10DU072937 |

DECISION AND JOURNAL ENTRY

Dated: October 11, 2022

HENSAL, Presiding Judge.

{¶1} Jennifer Hibben appeals an order of the Lorain County Court of Common Pleas, Domestic Relations Division. For the following reasons, this Court affirms.

I.

{¶2} Ms. Hibben ("Mother") and Stephen Williams ("Father") divorced in 2012. They had two children during the marriage, one born in 2007 and the other in 2010. In 2017, Father agreed to terminate his parenting time and have no further contact with the children. A few months later, his mother ("Grandmother") petitioned for visitation rights with the children. She ended up entering into an agreement with Mother that allowed her to visit with them on the second Sunday of each month, and the trial court incorporated their agreement into a court order. Within weeks, however, the parties began disagreeing over what the agreement required and whether the other party had violated it. Grandmother moved to show cause and to modify the visitation order, and Mother moved to terminate Grandmother's visitation. Following a hearing before a magistrate,

the magistrate found that Mother had violated the agreement, found her in contempt, and awarded Grandmother attorney fees. The magistrate determined that it was not in the best interest of the children to resume visitation with Grandmother, however, until they had completed counseling. The trial court adopted the magistrate's decision, which found Mother in contempt but suspended Grandmother's visitation temporarily. Mother objected to the magistrate's decision, but the trial court overruled her objections. Mother has appealed, assigning six errors. We will combine our consideration of some of the assignments of error because they concern the same issues.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING MOTHER'S MOTION TO TERMINATE GRANDMOTHER'S VISITATION[.]

{¶3} In her first assignment of error, Mother argues that the trial court failed to give special weight and deference to her wishes when it denied in part her motion to terminate Grandmother's visitation. She also argues that Grandmother frightened the children during their visits, calling her a liar and suggesting that she would be put in jail for it. Mother further argues that Grandmother lied to the guardian ad litem about whether she had told the children such things. According to Mother, the children have no desire to have a relationship with Grandmother and the trial court should have adopted the guardian ad litem's recommendation to stop visits with Grandmother. This Court will focus on Mother's special-weight argument because it involves a question of law and Mother repeats her other arguments within her second and third assignments of error.

{¶4} Under Revised Code Section 3109.11, in determining whether to grant anyone reasonable companionship with a child, the court must consider all relevant factors, including the factors listed in Section 3109.051(D). One of the factors listed in Section 3109.051(D) is "the

wishes and concerns of the child's parents[.]" R.C. 3109.051(D)(15). In *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, the Ohio Supreme Court explained that consideration of the parents' wishes is mandatory and that, in order to protect a parent's due process rights, the "trial court must give special weight to that factor in making its visitation determination[.]" *Id*. at ¶ 42.

{¶5} Under *Harrold*, the fact that a trial court must give "special weight" to parents' wishes does not mean that it must give them greater weight. The Ohio Supreme Court explained that the special weight required to be given to parents' wishes and concerns is addressed by Section 3109.051(D)(15), which "explicitly identifies the parents' wishes regarding the requested visitation or companionship as a factor that must be considered[.]" *Id*. at ¶ 43. Although acknowledging that the statute lists 15 other factors that the trial court must also consider, the Court determined that this did not minimize the parental-wishes factor. Instead, the Court concluded that "Ohio's nonparental-visitation statutes not only allow the trial court to afford parental decisions the requisite special weight, but they also allow the court to take into consideration the best interest of the child and balance that interest against the parent's desires." *Id*. A court does not have to use the words "special weight" in its decision. *Id*. at ¶ 45.

{¶6} The trial court adopted the decision of the magistrate, which determined that Mother did not act in good faith in connection with her agreement with Grandmother. It found that Mother had sabotaged some of the visits and cancelled others. It also found that Mother had failed to foster a relationship between the children and Grandmother. The court further found that the children had previously had a good relationship with Grandmother but that the relationship had been negatively influenced, primarily by Mother.

{¶7} Beside the wishes of a child's parents, Section 3109.051(D) requires the court to consider, among other factors, the child's prior relationship with the person who requested

visitation, the mental health of all the parties, the willingness of the parties to reschedule missed visitations, and any other factor in the best interest of the child. In this case, the court agreed with Mother that visitation with Grandmother was not in the children's best interest at the present time. It, therefore, granted her motion in part. There is no indication that the trial court failed to give Mother's wishes special weight. Mother's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

> THE TRIAL COURT'S DECISION IN DENYING MOTHER'S MOTION TO TERMINATE GRANDMOTHER'S VISITATION WAS AN ABUSE OF DISCRETION

ASSIGNMENT OF ERROR III

> THE TRIAL COURT'S DECISION IN DENYING MOTHER'S MOTION TO TERMINATE GRANDMOTHER'S VISITATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶8} In her second assignment of error, Mother argues that the trial court abused its discretion when it denied her motion to terminate Grandmother's visitation. In her third assignment of error, Mother argues that the trial court's decision to deny her motion to terminate Grandmother's visitation was against the manifest weight of the evidence. This Court "will not reverse a trial court's decision regarding visitation rights absent an abuse of discretion." *Jenkins v. Jenkins*, 9th Dist. Lorain No. 18CA011414, 2019-Ohio-4909, ¶ 5. "Factual findings by the trial court, however, are reviewed 'under a manifest weight of the evidence standard.'" *Id*. at ¶ 13, quoting *Loewen v. Newsome*, 9th Dist. Summit No. 28107, 2018-Ohio-73, ¶ 15.

{¶9} The agreement between Mother and Grandmother, which became an entry of the trial court, provided Grandmother would have visitation with the children on the second Sunday of each month, although the first visit would be July 15, 2018. The first two visits would be for two hours at Splash Zone, which has a pool and other facilities. Mother could be present for the

visits but was directed to remain away so that Grandmother could visit with the children. The following four visits would be four hours, and then they would become six hours in January 2019 and thereafter. The agreement also provided that the parties would not speak negatively about the other in the presence of the children and that Grandmother would ensure the children's attendance at any activities they had scheduled during the visitation time. Mother agreed to notify Grandmother of any activities when she became aware of them.

{¶10} Although the parties did not agree about who started it, they began arguing almost immediately upon seeing each other at Splash Zone during the first visit. Grandmother testified that Mother began yelling at her when she arrived with the children. Mother testified that Grandmother's husband yelled at her first that she was not allowed to be there, even though the agreement provided she could attend the first two visits. The parties agreed that the children tended to gravitate to Mother during the visit. According to Grandmother, this made visiting with them challenging.

{¶11} During the second visit, the children conspired to keep away from Grandmother and her husband and would not engage in conversation, making visiting with them challenging again. At one point the children ran into a building and Grandmother and her husband stood near the doors to the room the children were in, trying to talk with them. Later, the children went into a restroom and refused to come out. Mother eventually went in with them and testified that one of the children had vomited, but said it occurred before she entered.

{¶12} The September visit began with Grandmother and her husband picking the children up to take them to one of the children's soccer game. According to Grandmother, Mother knew about the game for two weeks but only told her about it a week ahead of time. Furthermore, when she arrived, Mother told her for the first time that the children had to go bowling after the soccer

game, even though Mother had known about the event for several days. Mother went to the bowling alley too, which she testified was because it was the first session and so she wanted to make sure the children were registered properly and see how it would operate.

{¶13} During the ride to the soccer field, Grandmother and her husband tried to engage the children in conversation, but they refused to say anything. Grandmother testified and presented photographs that showed Mother standing in front of the child who was not playing during the soccer game, hindering her attempt to engage that child in conversation. The children also rode with Grandmother to the bowling alley. Unbeknownst to Grandmother, one of the children made an audio recording of the car rides. At one point during the ride to the bowling alley, Grandmother advised the children that it would not be good for Mother if they did not talk to her and her husband. She also commented that it can be really hard if someone tells you not to tell the truth, that it would look really bad for someone who tells children to lie, and that she thought someone could go to jail for doing so.

{¶14} Because Grandmother believed Mother was interfering with her visitation, she filed a motion to show cause and motion to modify visitation before the October visit. On the day of the visit, Mother sent a text message to Grandmother, informing her that there would be no visit. Grandmother went to pick up the children at Mother's house anyway, but there was no response. The next day, Mother moved to suspend Grandmother's visitation.

{¶15} According to Grandmother, when she arrived to pick the children up for the November visit, Mother told her for the first time that the children had bowling that day. Mother thought that Grandmother knew the children were in a league and would have it every Sunday. Because of the late notice, Grandmother refused to take the children to bowling and just hosted them at her home. The children refused to enter Grandmother's house, however, so they remained

in the yard for the entire visit. Mother also contacted the police about Grandmother's refusal to take the children to bowling. Thereafter, Mother refused to let Grandmother visit with the children, sending text messages to Grandmother that the children were unavailable on the scheduled visitation days.

{¶16} Mother argues that Grandmother's visitation should be terminated because she blocked the children in a room during the August visit, spoke negatively about Mother during the September visit, did not ensure the children's attendance at their scheduled activity during the November visit, and kept them outside in the cold during the entire November visit. Mother also argues that Grandmother lied to the guardian ad litem about whether she said what she had said to the children while driving them to bowling during the September visit. Mother also notes that the guardian ad litem recommended that the children not have any further contact with Grandmother, unless the children request it.

{¶17} Regarding Grandmother's actions during the August visit, Mother testified that she could see the children through a glass wall and said that the children were in the room for around 15 seconds. The picture Mother submitted of the event shows that Grandmother and her husband were near the entrances to the room but were not obstructing the doorways.

{¶18} Regarding the September visit, during the car ride to the soccer game, the children refused to engage in conversation with Grandmother and her husband about breakfast, swimming, their friends, school, family memories, their uncle, their cousins, bowling, the Browns, birthday parties, soccer, basketball, which child was faster, whether Grandmother was faster than them, and whether they had arrived at the right location. They also refused to raise their hands in response to questions or even nod or shake their heads. This led Grandmother to suspect that someone must

have told the children not to talk to them.  She asked the children, but they did not respond to that question either.

{¶19} During the drive to the bowling alley, the children participated in some conversation.  Grandmother asked why the children were so angry at them compared to their paternal grandfather's family.  The children told them that the other grandparents were nicer and reminded Grandmother's husband of times when he pushed one of them in a pool and threw a child on a couch.  When Grandmother asked specifically what she had done, the children replied that she made them go to church in fancy clothes.  Although Grandmother and her husband attempted to keep the conversation going, the children stopped talking again.  Grandmother told the children that, if they did not talk with them, things would not go well for Mother.  She explained that the children did not have to be afraid of them and reminded them of when they used to do activities and go on vacation together.  Grandmother told the children that she did not actually have to take them bowling because Mother had not told her ahead of time about it, but that she was going to because she wanted the children to be able to do fun activities.  The children engaged a little about when they had learned they would be going bowling, whether a friend of one of them would also be bowling, and whether they had gone to an amusement park over the summer.  When one of the children stopped participating, however, Grandmother's husband said the child was being rude and reminded the child how the child had always been so polite. Grandmother chimed in that the child had always told the truth too.  Grandmother then commented that it is hard when you do not tell the truth.  Grandmother's husband said that he knew the child was intelligent and could hear them, and Grandmother said that it is really hard if someone tells you not to tell the truth.  Grandmother's husband said that they had never done anything to hurt the children, and Grandmother added that they had never told the children to lie either.  Grandmother mused that it

would eventually come out, that it would be really bad for someone who tells little kids to lie, and that such a person could even go to jail. Grandmother's husband interjected that he did not know about that, and the car fell silent until Grandmother's husband began asking about soccer again. A little later Grandmother commented that, when someone tells you not to tell the truth, it makes her emotional.

{¶20} At worst, Grandmother implicitly suggested that Mother could go to jail if she had instructed the children to lie to her. It is arguable whether such a statement constitutes speaking negatively about Mother under the terms of the agreement. Regarding the November visit, Grandmother did not take the children to bowling, but Mother also did not inform her of the activity when she learned about it. Mother had not allowed Grandmother visitation in October, and the trial court found that Mother had specifically sabotaged Grandmother's visits by scheduling a new activity during them.

{¶21} Regarding Grandmother's interview with the guardian ad litem, Grandmother testified that, when she spoke with the guardian ad litem, she did not remember suggesting to the children that their Mother could go to jail for telling them to lie. Although the trial court found the guardian ad litem's belief that Grandmother was not being truthful credible, that was the only area where the guardian ad litem did not believe Grandmother was being honest with her. Regarding the guardian ad litem's recommendations, although she recommended no further contact between Grandmother and the children, she also wrote that, if the court thought it was in the best interest of the children to attempt to salvage the relationship between Grandmother and the children, it should be structured and monitored through reunification counseling. The guardian ad litem also opined that the visitation schedule agreed to by Grandmother and mother could be resumed after successful completion of that counseling.

{¶22} Upon review of the record, we cannot say that the trial court exercised improper discretion when it suspended but did not terminate Grandmother's visitation. The trial court considered each relevant factor under Section 3109.051(D). It noted Grandmother's former significant relationship with the children and Mother's involvement in impeding it. The court also provided visitation could not resume until the children participated in counseling. Mother's second assignment of error is overruled.

{¶23} Mother also argues that the court's determination that a relationship between Grandmother and the children is important to the children's lives is not supported by the record. The Ohio Supreme Court, however, has "recognize[d] the importance of a grandchild-grandparent relationship[.]" *In re Whitaker*, 36 Ohio St.3d 213, 216 (1988). Accordingly, we cannot say that the trial court's statement to that effect is against the manifest weight of the evidence. Mother's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT'S DECISION IN FINDING MOTHER IN CONTEMPT OF COURT WAS AN ABUSE OF DISCRETION

{¶24} In her fourth assignment of error, Mother argues that the trial court incorrectly found her in contempt of court. This Court reviews a trial court's finding of contempt for an abuse of discretion. *Morrow v. Becker*, 9th Dist. Medina No. 11CA0066-M, 2012-Ohio-3875, ¶ 47.

{¶25} "[T]he failure to comply with a court ordered visitation schedule is an indirect contempt." *White v. White*, 9th Dist. Wayne No. 2525, 1990 WL 27172, *1 (Mar. 7, 1990). Mother does not deny that she refused Grandmother's scheduled visitation, but she argues that her behavior was justified after Grandmother blocked the children in a room during the August visit, upsetting them to the point that they were crying and one of them vomited. Grandmother's husband was also irate during the July visit and Grandmother threatened that things were not going to go well

for her during the September visit. Grandmother also told the children that someone could go to jail if they told little kids to lie. According to Mother, following the September visit, the children were upset and terrified, so she could not allow the October visit to proceed. During the November visit, Grandmother kept the children outside for three hours and violated the agreement by refusing to take the children to their scheduled activity. Mother argues that, following such conduct, it was in the best interest of the children not to continue with visitation, and the guardian ad litem also recommended that visitation not continue. Mother notes that she filed her motion to terminate Grandmother's visitation the day after the scheduled October visitation day, based on Grandmother's conduct to that point.

{¶26} In *Shook v. Shook*, 9th Dist. Wayne No. 97CA0074, 1998 WL 663256 (Sept. 23, 1998), this Court explained that a trial judge's contempt finding "will not be determined to be an abuse of discretion unless it is unreasonable, arbitrary, or unconscionable." *Id*. at *1. This Court also explained that a trial court will not be reversed unless it acts outside the range of options in which it can operate and that the decision to hold a defendant in contempt or not in contempt can both be within the acceptable range of options in a case. *Id*. at *2. In *Shook*, Roger Shook denied his son's mother visitation because he believed she was not properly giving the child his medication, he blamed her for the child's behavior issues, and he did not approve of her fiancé. In concluding that the trial court exercised proper discretion when it held him in contempt, this Court noted that Mr. Shook's reasons for denying visitation did not include any perceived immediate serious physical harm and that he refused visitation instead of seeking a modification of the visitation order. *Id*.

{¶27} As in *Shook*, Mother did not allege any perceived risk of immediate serious physical harm to the children before refusing Grandmother visitation in October or from December onward.

She also only moved to modify the visitation order after denying Grandmother visitation in October. The trial court could also consider that, in addition to completely denying Grandmother visitation on some days, Mother had taken steps to sabotage Grandmother's visits on the days she was able to exercise it. Mother has not alleged any justification for her behavior during the first three visits. Upon review of the record, we conclude that the trial court did not exercise improper discretion when it found Mother in contempt of court. Mother's fourth assignment of error is overruled.

ASSIGNMENT OF ERROR V

THE TRIAL COURT'S DECISION IN AWARDING ATTORNEY FEES TO GRANDMOTHER WAS AN ABUSE OF DISCRETION

ASSIGNMENT OF ERROR VI

THE TRIAL COURT ERRED AS A MATTER OF LAW IN AWARDING ATTORNEY FEES TO GRANDMOTHER

{¶28} In her fifth and sixth assignments of error, Mother argues that the trial court incorrectly awarded attorney fees to Grandmother. This Court generally reviews an award of attorney fees for an abuse of discretion. *Atlas Piers NEO v. Summit Constr. Co., Inc.*, 9th Dist. Summit No. 29457, 2021-Ohio-2024, ¶ 28. "Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere." *Bittner v. Tri–County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991), quoting *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91 (12th Dist.1985).

{¶29} "[A] trial court is required to order the party found in contempt of court to pay the adverse party's reasonable attorney fees arising from the litigation of the contempt matter involving a visitation order." (Emphasis omitted) *Mann v. Mendez*, 9th Dist. Lorain No. 04CA008562, 2005-Ohio-3114, ¶ 21. The trial court found Mother in civil, indirect contempt of

court and granted Grandmother's motion to show cause. Mother argues that Grandmother, however, failed to meet her burden of proving that the fees she incurred were reasonable and necessary. Mother notes that Grandmother did not testify about the fees at all. Although Grandmother's husband testified about them, he only acknowledged that Grandmother had received a bill from her attorney, that the hourly rate charged was $200, and that Grandmother paid the bill. He was not sure if the time charged related to Grandmother's motion to show cause, but he assumed the charges were for this case. He also stated that he thought the hourly rate was fair and reasonable.

{¶30} "'What is reasonable,' for purposes of calculating attorney fees, 'is a question of fact[, and t]he trial court must have evidence before it probative of that issue in order to make the finding." (Alterations in original) *Id*. at ¶ 22, quoting *Kimball v. Austin*, 9th Dist. Lorain No. 01CA007760, 2001 WL 866260, *2 (Aug. 1, 2001). Regarding the amount of hours that Grandmother's attorney spent on her motion to show cause, we note that at the end of the hearing before the magistrate, the parties went through the bill Grandmother had received from her attorney and worked out which hours were related to her motion to show cause and which were not. Regarding the reasonableness of the hourly rate, we note that this Court has not required expert testimony on the reasonableness of attorney fees in domestic relations matters, recognizing that "the trial court 'may rely on its own knowledge and experience to determine the reasonableness of the amount claimed.'" *Greer v. Greer*, 9th Dist. Lorain No. 18CA011407, 2019-Ohio-4304, ¶ 21, quoting *Long v. Long*, 10th Dist. Franklin No. 11AP-510, 2012-Ohio-6254, ¶ 20. The magistrate found that the $200 hourly rate charged by Grandmother's attorney was reasonable, just, and fair, and that it was reasonable for the attorney to spend 12.5 hours on the motion to show cause.

**{¶31}** Upon review of the record, we conclude that the trial court did not exercise improper discretion when it granted Grandmother's motion for attorney fees. Mother's fifth and sixth assignments of error are overruled.

## III.

**{¶32}** Mother's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CALLAHAN, J.
SUTTON, J.
CONCUR.

APPEARANCES:

MICHAEL J. TONY, Attorney at Law, for Appellant.

DANIEL J. GIBBONS, Attorney at Law, for Appellee.