[Cite as *Rose v. Jendral*, 2025-Ohio-5615.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

HOLLY E. ROSE

    Appellee

    v.

KYLE JENDRAL

    Appellant

C.A. No. 31489

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. DR-2022-04-1050

DECISION AND JOURNAL ENTRY

Dated: December 17, 2025

FLAGG LANZINGER, Presiding Judge.

{¶1} Kyle Jendral ("Father"), appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. For the following reasons, this Court affirms.

I.

{¶2} Father and Holly Rose ("Mother") are the biological parents of one minor child, N.G.G. (the "Child"). Father and Mother were never married. In 2022, Mother filed a complaint to establish parentage, parental rights and responsibilities, and child support. After an evidentiary hearing that spanned four, non-consecutive days, a magistrate issued a decision that designated Mother the legal custodian and residential parent of the Child, granted Father parenting time, and ordered Father to pay child support. The trial court adopted the magistrate's decision on February 1, 2024. Father filed objections, which the trial court overruled in part, and sustained in part, on July 25, 2024.

{¶3} Prior to the trial court's July 25, 2024, decision, the parties filed numerous motions. The motions relevant to this appeal are: (1) Father's motion to modify his child support obligation filed on June 5, 2024; and (2) Mother's motion for contempt filed on July 11, 2024. Father based his motion to modify his child support obligation on the fact that he was involuntarily terminated from his employment on February 1, 2024. Father asserted that his current support obligation was $1,841.28 per month, and requested that his obligation "be modified and more specifically deviated to $0 as of the date of his involuntary termination (February 1, 2024)." Mother based her motion for contempt on Father's refusal to exchange the Child with her mother (i.e., the Child's maternal grandmother whom Mother sent on her behalf) at the designated exchange location. Mother argued that this resulted in her being deprived of her parenting time.

{¶4} A magistrate held a hearing on several of the parties' pending motions on September 9, 2024, including Father's motion to modify his child support obligation and Mother's motion for contempt. Mother appeared with counsel at the hearing, and Father represented himself.

{¶5} During the hearing, Mother's counsel argued that the court should dismiss Father's June 5, 2024, motion to modify his child support obligation because the court could not grant the relief Father requested. More specifically, Mother's counsel argued that a court can only modify a child support obligation retroactive to the date of the filing of a motion to modify (here, June 5, 2024). Mother's counsel argued that Father's motion was legally defective because Father requested a modification as of the date he was terminated from his employment (i.e., February 1, 2024).

{¶6} The magistrate then heard testimony from Mother and Father relative to Mother's motion for contempt. The testimony indicated that Mother lives in Summit County and Father

lives six hours away in Indiana. The testimony indicated that the parties had a week on/week off parenting schedule in place for the Child, and that exchanges occurred on Saturdays at 11:00 a.m. at a police station halfway between their respective locations.

{¶7}   Mother testified that she was unable to meet Father on Saturday, July 6, 2024, so she sent her mother ("Grandmother") on her behalf to pick up the Child from Father. Mother testified that Father arrived at the police station and refused to exchange the Child with Grandmother, and that Father left the police station with the Child within a matter of seconds. Mother testified that this resulted in her not seeing the Child for three weeks, and that she wanted one week of make-up parenting time.

{¶8}   On cross-examination, Mother acknowledged that Father messaged her about picking up the Child later in the week, and that Father offered to exchange the Child with her if she drove all the way to Father's house. On re-direct examination, Mother explained that she was hesitant to drive six hours to pick up the Child because she had done so on a prior occasion, and Father made her wait two hours after she arrived before he exchanged the Child with her.

{¶9}   Father then testified that Mother informed him that Grandmother would be picking up the Child about ten minutes before Grandmother arrived at the police station. Father testified that he did not exchange the Child with Grandmother because the court order regarding parenting time indicated that the "parties" would exchange the Child, which he interpreted to mean Mother and Father only. Father also testified that he was concerned with Mother's health because he suspected she was pregnant, and Mother failed to respond to several messages he sent to her through OurFamilyWizard during the week leading up to the exchange.

{¶10} After the hearing, the magistrate issued a decision that dismissed Father's motion to modify his child support obligation and granted Mother's motion for contempt. This Court will summarize the magistrate's reasoning as to each motion in turn.

{¶11} Regarding Father's motion to modify his child support obligation, the magistrate noted that Father previously filed a motion to terminate his child support obligation based upon the loss of his employment, which the magistrate denied. The magistrate explained that Father filed the then-pending motion to modify his child support obligation on June 5, 2024, and that Father requested the court to deviate the child support order to $0 as of February 1, 2024, that is, the date he was terminated from his employment. The magistrate held that it could not grant the relief Father requested because, under R.C. 3119.83, courts cannot retroactively modify a child support obligation prior to the date of the filing of a motion to modify. The magistrate also held that, under R.C. 3119.22 through R.C. 3119.231, termination of employment is not a reason for a downward deviation in child support. The magistrate cited Ohio Supreme Court precedent for the proposition that a court must dismiss a motion if the court cannot grant the requested relief, and dismissed Father's motion on that basis.

{¶12} Regarding Mother's motion for contempt, the magistrate noted that the order in effect at the time Father refused to exchange the Child with Grandmother provided for parenting time as follows: "Alternating weeks; the exchanges shall take place on Saturdays at 11:00 a.m., with the parties continuing to meet halfway." The magistrate concluded that Mother proved by clear and convincing evidence that Father was in contempt of court for failing to exchange the Child with Grandmother for Mother's alternating week of parenting time.

{¶13} In reaching its conclusion, the magistrate rejected Father's argument that he did not exchange the Child with Grandmother because the order provided that the "parties" shall exchange

the Child. The magistrate explained that Grandmother was known to the Child and Father, that the order contained no language restricting who could exchange the Child, and that a "reasonable response at the exchange point would have been to turn over" the Child to Grandmother.

{¶14} The magistrate also explained that it "question[ed]" Father's testimony that he offered Mother opportunities to visit the Child that week, including offering Mother to drive six hours to Indiana to retrieve the Child. The magistrate found that those offers did not "negate [Father's] action of withholding [the Child] for [Mother's] parenting time[,]" and instead "escalate[d] the parental conflict and [did] not foster a peaceful parenting relationship." The magistrate concluded that Father failed to comply with the court's order regarding the exchange of the Child, and that Father's failure constituted contempt. The magistrate also ordered Father to pay Mother's attorney's fees related to the filing of the motion for contempt.

{¶15} Based upon its contempt finding, the magistrate sentenced Father to one day in the Summit County Jail. The magistrate suspended Father's jail sentence on the condition that Father purge the contempt by providing Mother with one week of Father's parenting time with the Child. The magistrate held that if Father failed to purge the contempt, it would impose the jail sentence.

{¶16} Father filed timely objections to the magistrate's decision, which the trial court overruled in part, and sustained in part. Relevantly, the trial court overruled Father's objections related to his motion to modify his child support obligation and Mother's motion for contempt. Father now appeals the trial court's decision, raising four assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

**THE TRIAL COURT ERRED BY FINDING [FATHER] IN CONTEMPT OF COURT WITHOUT CLEAR AND CONVINCING EVIDENCE OF A**

**WILLFUL VIOLATION OF A CLEAR AND UNAMBIGUOUS COURT ORDER, IN VIOLATION OF OHIO LAW AND THE CHILD'S BEST INTERESTS.**

{¶17} In his first assignment of error, Father argues that the trial court abused its discretion when it found him in contempt. We disagree.

{¶18} This Court reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Tabatabai v. Tabatabai*, 2009-Ohio-3139, ¶ 17 (9th Dist.). Under an abuse of discretion standard, we must determine whether the trial court's decision was arbitrary, unreasonable, or unconscionable rather than merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). In so doing, we consider the trial court's action with reference to the nature of the underlying matter. *Tabatabai* at ¶ 18.

{¶19} "This Court reviews a trial court's finding of contempt for an abuse of discretion." *Hibben v. McGuire*, 2022-Ohio-3598, ¶ 24 (9th Dist.). "Contempt is generally understood as a disregard for judicial authority." *Edminister v. Edminister*, 2011-Ohio-1899, ¶ 8 (9th Dist.); *see* R.C. 2705.02. "Contempt is established when the movant demonstrates the existence of 'a valid court order, knowledge of the order by the defendant, and a violation of the order.'" *A.G. v. Gain*, 2022-Ohio-95, ¶ 7 (9th Dist.), quoting *Henry v. Henry*, 2015-Ohio-4350, ¶ 12 (9th Dist.).

{¶20} "Because all contempt involves some type of sanction or punishment, the distinction between civil and criminal contempt is usually based on the purpose to be served by the sanction." *Liming v. Damos*, 2012-Ohio-4783, ¶ 12. "Often, civil contempt is characterized by conditional sanctions, i.e., the contemnor is jailed until he or she complies with the court order." *Id.* "On the other hand, criminal contempt is usually characterized by unconditional prison terms or fines." *Id.* Here, Father's contempt proceeding was civil in nature because the trial court

sentenced Father to one day in jail, but ordered that he could purge the contempt if he provided Mother with one week of his parenting time. *See id.* at ¶ 12-13.

{¶21} "In civil contempt proceedings, a finding of contempt must be premised on clear and convincing evidence." *Bohannon v. Bohannon*, 2020-Ohio-1255, ¶ 15 (9th Dist.), quoting *Zemla v. Zemla*, 2012-Ohio-2829, ¶ 11 (9th Dist.). "The party seeking to hold the other in contempt bears the burden of proving the other's failure to comply with an order of the court." *Bohannon* at ¶ 15. Notably, "[t]he Ohio Supreme Court has long recognized that '[p]roof of purposeful, willing or intentional violation of a court order is not a prerequisite to a finding of contempt.'" *Badertscher v. Badertscher*, 2015-Ohio-2189, ¶ 10 (9th Dist.), quoting *Pugh v. Pugh*, 15 Ohio St.3d 136 (1984), paragraph one of the syllabus. "Once the movant proves his [or her] prima facie case, the contemnor must present evidence of [his or] her inability to comply with the order or any other available defense." (Alterations in original.) *Bohannon* at ¶ 15, quoting *Zemla* at ¶ 11.

{¶22} Initially, this Court notes that Father has not challenged the existence of a court order, nor his knowledge of the court order. Instead, Father challenges the trial court's factual findings and argues that he did not violate the court order. To that end, Father first argues that the trial court erred by finding him in contempt because no clear and convincing evidence existed to demonstrate that he willfully violated a court order. In support of his argument, Father asserts that the order in effect at the time he did not exchange the Child with Grandmother was ambiguous. That order provided for parenting time as follows: "Alternating weeks; the exchanges shall take place on Saturdays at 11:00 a.m., with the parties continuing to meet halfway." Father argues that the order's use of "parties" was ambiguous, and that an ambiguous order cannot serve as a basis for a contempt finding. Relatedly, Father argues that he acted in good faith when he did not

exchange the Child with Grandmother, and that a party cannot be found in contempt if the party acted in good faith to comply with an ambiguous order.

{¶23} Second, Father argues that the trial court erred by finding him in contempt because the trial court misstated the record. Specifically, Father points to the magistrate's finding (which the trial court adopted) that it "question[ed]" Father's testimony that he offered Mother opportunities to visit the Child during the week he did not exchange the Child, including offering Mother to drive six hours to Indiana to retrieve the Child. Father argues that record directly contradicts this finding because Mother acknowledged during her testimony that Father offered her opportunities to pick up the Child that week, which was corroborated by messages exchanged between the parties on OurFamilyWizard.

{¶24} Third, Father argues the trial court erred by finding him in contempt because he did not exchange the Child with Grandmother due to safety concerns, and he attempted to contact Mother to resolve the issue. Father also argues that, even if a technical violation of the order occurred, the trial court erred in finding him in contempt because Mother filed her motion for contempt to punish him, which harmed his relationship with the Child and, therefore, was not in the Child's best interests.

{¶25} Father's arguments lack merit. Courts have acknowledged that a "party cannot be found in contempt if the contempt charge is premised on a party's failure to obey an order of the court and the order is not clear, definite, and unambiguous and is subject to dual interpretations." *Deitz v. Deitz*, 2017-Ohio-8354, ¶ 14 (3d Dist.), quoting *Contos v. Monroe Cty*, 2004-Ohio-6380, ¶ 15 (7th Dist.) (collecting cases). An order is ambiguous if it is susceptible to more than one reasonable interpretation. *See Adair v. City of Norton*, 2017-Ohio-5619, ¶ 17 (9th Dist.).

{¶26} The record supports a finding that Father's purported interpretation of the order was neither genuine, nor reasonable under the circumstances. *See Adair* at ¶ 17. As the trial court emphasized, the order contained no language restricting who could exchange the Child. The record indicates that Grandmother was known to Father and the Child, and that Mother informed Father prior to the exchange that Grandmother would be picking up the Child on her behalf. As the magistrate found, a "reasonable response at the exchange point would have been to turn over" the Child to Grandmother. Instead, Father left the police station with the Child, later claiming that he did so because the order was ambiguous and/or he was concerned for Mother's health. The trial court rejected Father's excuses for not exchanging the Child. *See Bohannon*, 2020-Ohio-1255, at ¶ 21 (9th Dist.) ("This Court is mindful that the trier of fact is in the best position to resolve credibility issues during a contempt proceeding . . . ."). Having reviewed the record, this Court cannot say that the trial court erred by doing so.

{¶27} Father's remaining arguments primarily relate to his actions after he failed to exchange the Child with Grandmother at the police station, as well as the magistrate's factual finding that it "question[ed]" Father's testimony that he offered Mother opportunities to visit and/or pick up the Child that week. These arguments also lack merit. The record reflects that Father arrived at the police station, refused to exchange the child with Grandmother, and then left the police station within a matter of seconds. While the magistrate "question[ed]" Father's testimony that he offered Mother opportunities to visit the Child that week, it ultimately found that those offers did not "negate [Father's] action of withholding [the Child] for [Mother's] parenting time[,]" and instead "escalate[d] the parental conflict and [did] not foster a peaceful parenting relationship." Having reviewed the record, this Court cannot say that the trial court abused its

discretion when it adopted the magistrate's decision and found Father in contempt. Accordingly, Father's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY REFUSING TO MODIFY DEFENDANT-APPELLANT'S CHILD SUPPORT OBLIGATION DESPITE AN INVOLUNTARY LOSS OF EMPLOYMENT CAUSING A SUBSTANTIAL CHANGE IN FINANCIAL CIRCUMSTANCES, IN VIOLATION OF OHIO REVISED CODE §§ 3119.79, 3119.84, AND 3119.23, AND CONTRARY TO THE CHILD'S BEST INTERESTS.**

{¶28} In his second assignment of error, Father argues that the trial court erred when it dismissed his motion to modify his child support obligation filed on June 5, 2024. For the following reasons, this Court disagrees.

{¶29} "It is well settled that a trial court's ruling on a motion to modify child support is reviewed under an abuse of discretion standard." *Jurewicz v. Rice*, 2001 WL 1421855, *2 (9th Dist. Nov. 14, 2001). "Ordinarily, a trial court's decision to modify a child support obligation is retroactive to the date the request for modification was first filed." *Bender v. Bender*, 2001 WL 808975, *5 (9th Dist. July 18, 2001); *Cozzone v. Keglovic,* 2001 WL 57173, *3 (9th Dist. Jan. 24, 2001) (same). The purpose of this "widely accepted" rule is to "protect the parties from the delays that are inherent in our legal system." *Sandel v. Choma*, 2012-Ohio-3781, ¶ 5 (9th Dist.), quoting *State ex rel. Mullaney v. Mullaney*, 1997 WL 679904, *2 (9th Dist. Oct. 22, 1997).

{¶30} "Nevertheless, a trial court 'may modify non-delinquent child support obligations retroactively to a date prior to the filing of the motion to modify if special circumstances are demonstrated.'" *Bender* at *5, quoting *Zaccardelli v. Zaccardelli*, 2000 WL 1026687, *4 (9th Dist. July 26, 2000). Special circumstances include "extraordinary matters like fraud or wrongdoing, such as when an obligor fails to report income changes or conceals his or her income."

*Behnken v. Behnken*, 2020-Ohio-389, ¶ 27 (2d Dist.); *accord In re I.L.J.*, 2023-Ohio-2960, ¶ 8 (8th Dist.); *In re J.S.*, 2012-Ohio-421, ¶ 21 (2d Dist.); *In re S.C.*, 2020-Ohio-233, ¶ 29 (12th Dist.).

{¶31} In his motion to modify his child support obligation filed on June 5, 2024, Father asserted that he was involuntarily terminated from his employment on February 1, 2024. As a result, Father requested that his child support obligation "be modified and more specifically deviated to $0 as of the date of his involuntary termination (February 1, 2024)."

{¶32} The magistrate held that it could not grant the relief Father requested because, under R.C. 3119.83, courts cannot retroactively modify a child support obligation prior to the date of the filing of a motion to modify. Father objected to the magistrate's decision, in part, on the basis that those statutes relate to delinquent child support, which was inapplicable to this case.

{¶33} In overruling Father's objection, the trial court did not rely on R.C. 3119.83 or R.C. 3119.84. Instead, the trial court relied upon caselaw to conclude that Father's termination from his employment was not a "special circumstance" that warranted a retroactive modification of child support prior to the date of the filing of the motion to modify. Because Father's motion specifically requested the trial court to modify his child support obligation retroactively as of the date he was terminated from his employment (rather than the date of the filing of his motion), the trial court concluded that the magistrate did not err when it dismissed Father's motion.

{¶34} On appeal, Father argues that the trial court erred when it dismissed his motion to modify his support obligation for four reasons. First, Father argues that his involuntary loss of employment on February 1, 2024, constituted a substantial change of circumstances that mandated modification of his child support obligation under R.C. 3119.79. Second, Father argues that the trial court erred by not granting him interim relief because immediate relief was justified under Civ.R. 53(D)(4)(e)(ii). Third, Father argues that the trial court misapplied the law regarding

retroactivity because special circumstances existed in this case that justified the trial court retroactively modifying his child support obligation to the date he was involuntarily terminated (February 1, 2024) instead of the date he filed his motion (June 5, 2024). Fourth, Father argues that the trial court misapplied R.C. 3119.83 and R.C. 3119.84 because those statutes prohibit the retroactive modification of delinquent support, and the record reflects that he was not delinquent on his support payments. Father argues that the trial court's failure to retroactively modify his child support obligation to the date he was terminated from his employment was not in the Child's best interests, and was contrary to the mandates of R.C. 3119.22.

{¶35} Father's arguments lack merit. In his June 5, 2024, motion to modify, Father specifically requested that his child support obligation "be modified and more specifically deviated to $0 as of the date of his involuntary termination (February 1, 2024)." In overruling Father's related objection to the magistrate's decision, the trial court did not rely on R.C. 3119.83 or R.C. 3119.84. Instead, the trial court relied upon caselaw to conclude that Father's termination from his employment was not a "special circumstance" that warranted a retroactive modification of child support prior to the date of the filing of the motion to modify. For the following reasons, this Court concludes that the trial court did not err by doing so.

{¶36} As noted, "a trial court 'may modify non-delinquent child support obligations retroactively to a date prior to the filing of the motion to modify if special circumstances are demonstrated.'" *Bender*, 2001 WL 808975, at *5, quoting *Zaccardelli*, 2000 WL 1026687, at *4. Special circumstances include "extraordinary matters like fraud or wrongdoing, such as when an obligor fails to report income changes or conceals his or her income." *Behnken*, 2020-Ohio-389,

at ¶ 27 (2d Dist.).[1]  This Court cannot say that the trial court abused its discretion when it determined that Father's loss of employment did not constitute special circumstances that warranted retroactively modifying his support obligation to a date prior to the filing of his motion to modify.  It follows that the trial court did not err when it dismissed Father's motion.

{¶37}  Father's remaining arguments are premised on the merits of his motion.  In light of this Court's conclusion that the trial court did not err when it dismissed Father's motion, Father's remaining arguments are moot.  Father's second assignment of error is overruled.

### ASSIGNMENT OF ERROR THREE

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY IMPOSING PUNITIVE PURGE CONDITIONS—INCLUDING ARBITRARY LOSS OF PARENTING TIME AND AN UNCONSCIONABLE AWARD OF ATTORNEY'S FEES—WITHOUT PROPER LEGAL AUTHORITY, EVIDENTIARY SUPPORT, OR REGARD FOR THE CHILD'S BEST INTERESTS.**

{¶38}  In his third assignment of error, Father argues that the trial court abused its discretion by imposing punitive purge conditions.  This Court disagrees.

{¶39}  "A civil contempt sanction is reviewed for an abuse of discretion."  *State ex rel. Yost v. Crossridge, Inc.*, 2022-Ohio-1455, ¶ 39 (7th Dist.).  "A trial court abuses its discretion

---

[1] This Court notes that Father relies upon caselaw defining a "special circumstance" as a "significant event" in the litigation.  The trial court also relied upon this caselaw.  But a review of the caselaw defining a "special circumstance" as a "significant event" in the litigation indicates that those cases involve situations wherein a trial court modified a support order to a date *after* a party filed a motion to modify.  *See, e.g.*, *Sandel*, 2012-Ohio-3781, at ¶ 6-7 (9th Dist.); *State ex rel. Draiss v. Draiss*, 70 Ohio App.3d 418 (9th Dist. 1990); *In re P.J.H.*, 2011-Ohio-5970, ¶ 18-19 (2d Dist.); *Zamos v. Zamos*, 2004-Ohio-2310, ¶ 13-14 (11th Dist.); *Crandall v. Crandall*, 2020-Ohio-625, ¶ 23-24 (11th Dist.).  In those circumstances, "that date must have a 'reasonable basis' and bear some significance in the underlying litigation."  *Sandel* at ¶ 6, quoting *In re P.J.H.* at ¶ 19.  Additionally, the trial court "must state the reason" for choosing a date after the party filed its motion to modify.  *Sandel* at ¶ 6 (9th Dist.).  That caselaw is inapplicable to the facts of this case because Father requested the trial court to modify his support obligation to a date *prior* to his filing of his motion to modify.

when it orders conditions for purging that are unreasonable or impossible for the contemnor to meet." *Gray v. Gray*, 2025-Ohio-2311, ¶ 24 (9th Dist.), quoting *Ward v. Smith*, 2024-Ohio-1682, ¶ 17 (5th Dist.).  As this Court has stated, "[o]ne charged and found guilty of civil contempt must be allowed to purge him/herself of the contempt by showing compliance with the court's order he/she is charged with violating." *Edminister*, 2011-Ohio-1899, at ¶ 9 (9th Dist.).

{¶40}  Here, the trial court found Father in contempt for violating an order regarding parenting time, which deprived Mother of one week of her parenting time with the Child.  The trial court ordered that Father could purge the contempt by providing Mother with one week of Father's parenting time with the Child.

{¶41}  On appeal, Father first argues that the trial court's purge condition of requiring him to provide Mother with one week of his parenting time was punitive in nature, and not in the best interests of the Child.  This Court disagrees.  "Given the fact that there is no way to go back in time and restore missed parenting time, the best a parent can hope for is that he or she will be awarded future substitute time and incentives to deter the other parent from further interference." *Bohannon*, 2018-Ohio-2919, at ¶ 15 (9th Dist.).  Despite Father's argument to the contrary, the trial court's condition of requiring Father to provide Mother with one week of his parenting time to purge his contempt was neither unreasonable, nor impossible for Father to meet.  *See Gray* at ¶ 24.  Consequently, Father's argument lacks merit.

{¶42}  Father next argues that the trial court erred by ordering him to pay Mother's attorney's fees related to her motion for contempt because Mother did not prove that attorney's fees were reasonable, necessary, or causally related to the contempt findings.  For the following reasons, this Court rejects Father's argument.

{¶43} Generally, this Court reviews an award of attorney's fees for an abuse of discretion. *Hibben v. McGuire*, 2022-Ohio-3598, ¶ 28 (9th Dist.). As this Court has stated, a "trial court is required to order the party found in contempt of court to pay the adverse party's reasonable attorney fees arising from the litigation of the contempt matter involving a visitation order." *Hibben* at ¶ 29, quoting *Mann v. Mendez*, 2005-Ohio-3114, ¶ 21 (9th Dist.). "What is reasonable, for purposes of calculating attorney fees, is a question of fact, and the trial court must have evidence before it probative of that issue in order to make the finding." (Cleaned up.) *Hibben* at ¶ 30, quoting *Mann* at ¶ 22. "Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere." *Hibben* at ¶ 28, quoting *Bittner v. Tri–County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991).

{¶44} Here, Mother's counsel presented the magistrate with an affidavit that included an itemized statement of attorney's fees Mother incurred related to her motion for contempt at the September 9, 2024, hearing. The record reflects that Mother's counsel requested attorney's fees in the amount of $2,982.50. In its decision, the magistrate determined that some of that amount reflected fees that pre-dated the underlying contempt incident. Accordingly, the magistrate reduced Mother's counsel's fees to $1,592.50, which reflected the attorney's fees Mother incurred from the date of the contempt incident through the hearing. The trial court adopted the magistrate's decision in this regard, finding the fees reasonable and appropriate. Despite his arguments to the contrary, Father has not established that the trial court abused its discretion in doing so. *See Hibben* at ¶ 29.

{¶45} In light of the foregoing, Father's third assignment of error is overruled.

**ASSIGNMENT OF ERROR FOUR**

**THE TRIAL COURT ERRED AS A MATTER OF LAW BY MISAPPLYING SUMMIT COUNTY DOMESTIC RELATIONS LOCAL RULE 27, OHIO**

CIVIL RULE 53(D), OHIO CIVIL RULE 75(N), AND OHIO REVISED CODE §§ 3119.79, 3119.83, 3119.84, 3119.22, AND 3119.23, THEREBY DENYING DEFENDANT-APPELLANT DUE PROCESS AND A FAIR ADJUDICATION, CAUSING SUBSTANTIAL PREJUDICE TO DEFENDANT-APPELLANT AND UNDERMINING THE CHILD'S BEST INTERESTS.

{¶46} In his fourth assignment of error, Father asserts that the trial court erred by failing to comply with provisions of the Revised Code, the Rules of Civil Procedure, and the Local Rules of the Summit County Domestic Relations Court.

{¶47} This Court rejects Father's fourth assignment of error outright. Appellate Rule 16(A)(7) requires an appellant's argument to include "the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." "As this Court has stated, 'merely setting forth conclusory statements' does not satisfy an appellant's burden on appeal." *State v. Marshall*, 2025-Ohio-2283, ¶ 16 (9th Dist.), quoting *Pietrangelo v. Lorain Cty. Printing & Publishing Co.*, 2017-Ohio-8783, ¶ 23 (9th Dist.).

{¶48} Despite asserting that the trial court erred by misapplying eight different rules and/or statutes, Father's fourth assignment of error is 10 sentences long, contains conclusory statements, and—with one exception—fails to cite the portions of the record upon which he relies. When Father did cite to the record, he cited his "objections to factual findings in ¶¶ 31-32" of the magistrate's decision, and a 6-page portion of his objections to the magistrate's decision. Father neither explains the magistrate's factual findings, nor the basis for his objections to those factual findings. Instead, Father's deficient argument puts this Court in the position of reviewing several pages of his supplemental objections to the magistrate's decision to discern if and/or to what extent they support his assigned error. This Court "will not guess at undeveloped claims on appeal." *Pietrangelo* at ¶ 23, quoting *State v. Stevenson*, 2009-Ohio-2455, ¶ 21 (9th Dist.). Nor will this

Court review the record and construct an argument on Father's behalf. *Marshall* at ¶ 17. Father's fourth assignment of error is overruled.

### III.

{¶49} Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

HENSAL, J.
SUTTON, J.
CONCUR.

APPEARANCES:

KYLE JENDRAL, pro se, Appellant.

CORINNE HOOVER, PAIGE KERN, and TAD ORVAL HOOVER, Attorneys at Law, for Appellee.